Cook & Wheeler, Appellees, v. The Chicago, Rock Island & Pacific Railway Company, Appellant..

1.  **Common Carriers:** FREIGHT CHARGES : REBATES. The plaintiffs, who were shippers of cattle, were charged by the defendant from three to ten dollars per carload of cattle shipped over its road in excess of the charges made to other shippers for the same service and under the same conditions, the difference being allowed the favored shippers in the shape of a secret rebate, which fact was concealed from the plaintiffs. *Held,* that at common law a common carrier is entitled to a reasonable charge only for the service rendered ; that its discriminations in favor of other shippers were evidence that the charges demanded of plaintiffs were unreasonable ; and that the plaintiffs were entitled to recover the difference between the charges paid by them and the more favorable rates granted to other shippers.

2.  ———— : ———— : ———— : VOLUNTARY PAYMENT. A payment of money in the belief that the demand is proper, and without the knowledge that it is wrongfully exacted, is not voluntary, and may be recovered back.

3.  ———— : ———— : ———— : LIMITATION OF ACTIONS. The plaintiffs having been kept in ignorance of their rights through the fraudulent concealment of the facts by the defendant, *held,* that the statute of limitations did not begin to run as to their cause of action until their discovery of the facts on which the action was based.

4.  **District Court Rules:** COPIES OF PLEADINGS : EXCESSIVE FEES. Rule number one of the district court rules does not require that a literal copy should be made of various pleadings in a cause which are precisely alike, except, possibly, a date, an amount, or the like ; and a charge under said rule of five hundred and eighty-two dollars for copies of such pleadings, the printing of which cost but thirty dollars for both originals and copies, *held,* should be reduced to fifteen dollars.

*Appeal from Jasper District Court.*—HON. D. RYAN, Judge.

WEDNESDAY, OCTOBER 29, 1890.

THIS is an action at law to recover of the defendant certain alleged overcharges for the shipment of a large number of carloads of live stock from Jasper county, in this state, to the Union Stock-Yards, near Chicago, Illinois. The shipments were alleged to have been made between June, 1879, and April 22, 1883. The cause was referred to a referee to make up the issues, and try and determine the case, and report to the court. A trial was had, and a report was filed recommending a judgment for the plaintiffs. The defendant filed exceptions to the report. The exceptions were overruled, and a judgment was entered upon the report. The defendant appeals.

*T. S. Wright, Robt. Mather* and *Winslow & Varnum*, for appellant: The plaintiffs are not entitled to recover in any event. We assert the following to be the law : *First.* The only restriction imposed by the common law upon the common carrier, with reference to his rates of compensation was, that they should be reasonable. *Second.* Subject to this restriction only, he might discriminate as to the rates charged his customers, and might carry for one at one rate, and for others at a less, or even *gratis.* *Third.* A customer, to whom a rate reasonable in itself has been charged, cannot complain because a less rate has been granted others. *Railway Co. v. Sutton*, 4 Eng. & I. App. 226 ; *Baxendale v. Railway Co.*, 4 C. B. ( N. S.) 62; *Brantey v. Railway Co.*, 12 C. B. ( N. S.) 63 ; note to *Coggs v. Bernard*, 1 Smith's Leading Cases [ 8 Ed.] 394; Story on Bailments, sec. 508 ; 1 Wood's Ry. Law, 566 ; *Fitchburg Ry. Co. v. Gage*, 12 Gray, 393 ; *Sargent v. B. & L. Ry. Co.*, 115 Mass. 416 ; *Menacho v. Ward*, 27 Fed. Rep. 529 ; *United States ex rel. v. Railway Co.*, 40 Fed. Rep. 101. Mere discrimination in rates is not unlawful. It is only unjust discrimination which is prohibited. In determining what was an "undue or unreasonable preference" in favor of one shipper, "the fair interests of the railway company ought

to be taken into account." *Ransome v. Railway Co.*, 38 Eng. L. & Eq. 231 ; *Oxlade v. Railway Co.*, 40 Eng. L. & Eq. 234 ; *Nicholson v. Railway Co.*, 5 C. B. ( N. S.) 366 ; *Concord & P. Ry. Co. v. Forsaith*, 59 N. H. 122 ; Wood's Ry. Law, 566, *et seq.; Logan v. Railway Co.*, 2 Inter S. C. C. Rep. 604. The payments made by plaintiffs were voluntary, and cannot be recovered back. 1 Parsons on Cont. 466 ; *Evershed v. Railway Co.*, L. R. 3 Q. B. Div. 144 ; s. c., L. R. 3 App. Cas. 1029 ; *Gt. W. Ry. Co. v. Sutton*, 3 H. & C. 800 ; s. c., L. R. 4 H. L. Cas.. 226 ; *Lancashire Ry. Co. v. Gidlow*, L. R. 7 H. L. Cas. 517 ; *Parker v. Railway Co.*, 7 Man. & G. 253 ; *Killmer v. Railway Co.*, 100 N. Y. 395. A court may - not delegate its discretionary powers unless expressly authorized. The fact that other functions of the court are specifically conferred upon the referee is conclusive of the intention not to delegate this particular power. The referee is not a court, nor does he hold any term within the meaning of Code, sections 3687, 3684, 3685, 3686. *Hobart v. Hobart*, 45 Iowa, 503. Authorities are all against the power of a referee to order production of books and papers. *Frazer v. Phelps*, 3 Sandf. ( N. Y.) 741 ; *Willis v. Bailey*, 19 Johns. 268. If a referee may, in a proper case, order the production of books and papers, there was error in making the order in this case. Wharton on Evidence, sec. 754 ; Story, Eq. Juris., sec. 1485, n. 7 ; *Miller v. Mather*, 5 How. Pr. 160 ; *Willis v. Bailey*, 19 John. 268 ; *McAllister v. Pond*, 15 How. Pr. 299 ; *Finch v. Rikeman*, 2 Blatchf. 301 ; Story Eq. Juris., sec. 74 ; *Gelston v. Hoyt*, 1 Johns. Ch. R. 546 ; *Pegram v. Carson*, 10 Abb. Pr. 340 ; *Commercial Bank v. Dunham*, 13 How. Pr. 541 ; *Wood v. DeFiganiere*, 25 How. Pr. 522 ; *Avinger v. Railway Co.*, 7 S. E. Rep. ( S. C.) 493 ; *Garten v. Railway Co.*, 1 B. & S. 112 ; *Ragan v. Aiken*, 9 Lea, 609 ; *Johnson v. Railway Co.*, 16 Fla. 667 ; *Sutton v. Railway Co.*, 3 H. &. C. 841 ; *Eclipse Tow Boat Co. v. Railway Co.*, 24 La. Ann.; *Christie v. Railway Co.*, 7 S. W. Rep. ( Mo.) 567 ; *T. W. & W. Ry. Co. v. Elliott*, 76 Ill. 67 ; *Erie & P. D. Co. v. Cecil*, 112 Ill. 185 ; *C. & A. Ry. Co. v.*

*Cole Co.*, 79 Ill. 121.; *Ex parte Benson*, 18 S. C. 38;
*Peck v. Railway Co.*, 10 H. L. 511; *Bastard v. Bastard*,
2 Shaw. K. B. 82; *Harris v. Packard*, 5 Taunt. 264; *Citizens' Bank v. Railway Co.*, 2 Story, 35; 1 Chitty, Cont.
684; 2 Rorer on R. R. 1375.   A referee has no power,
under the Code, to order the production of books and
papers.   Under Code, secs. 3685, 3686.   In the cases
where the statute has been applied in this state, the
application has not gone beyond entries relating to dealings between the parties litigant.   *Sheldon v. Mickel*, 40
Iowa 19; *Allison v. Vaughn*, 40 Iowa, 421.   To sustain
such a rule, the applicant must have a legal or equitable
interest in the document, and it must appear that the
paper is in the hands of the holder as in some sense the
trustee of the applicant.   Wharton on Evidence, secs.
743, 746, 755; *Eschbach v. Lightner*, 31 Md. 532; Story,
Eq. Pl., sec. 858; *Attorney General v. Corp. of London*,
2 Mac. & Gord. 247; *Ringgold v. Jones*, 1 Bland. (Md.)
90, note.   In such cases it should appear that the applicant has an interest in the document for that special purpose.   *Duval v. Farmers' Bank*, 2 Bland. (Md.) 687;
*Powell v. Bradbury*, 4 M. G. & S. 541; s. c., 13 Jur. 349;
*Bank of Utica v. Hillard*, 6 Cowen, 62; *Willis v. Bailey*,
19 John. 268; *Woods v. DeFiganiere*, 25 How. Pr. 526;
*Watson v. Renwick*, 4 Johns. Ch. 382; *Gas Co. v.
Clarke*, *supra*; *Ratcliffe v. Bleasby*, 3 Bing. 150; *Rundle v. Beaumont*, 4 Bing. 537; *Rowe v. Howden*, 4 Bing.
539; *Fessel v. Millington*, 1 Moore & Scott, 605; *Powell
v. Bradbury*, 4 M. G. & S. 541; *Morrice v. Swaby*, 2
Beav. 500; *Gardner v. Dangerfield*, 5 Beav. 389; *Llewellyn v. Badeley*, 1 Hare, 527; *Parsons v. Robertson*,
2 Keen, 605; *Curd v. Curd*, 1 Hare, 274; *Smith v. Massie*, 4 Beav. 417.   The order was too broad and indefinite.
*Commercial Bank of Albany v. Dunham*, 13 How. Pr.
541; *Pegram v. Carson*, 10 Abb. Pr. 340; *Hackling v.
Edmonds*, 3 E. D. Smith, 539; *Cassard v. Hinman*, 6
Duer. 695; *Hoyt v. Am. Ex. Bank*, 1 Duer. 602; *People
v. Rector*, 6 Abb. Pr. 177; *Davis v. Dunham*, 13 How. Pr.
425; *Gould v. McCarty*, 1 Kern. 575; *Ervin v. Oregon R.
& N. Co.*, 22 Hun, 566.   There was error in ruling certain

of defendant's officers to answer interrogatories.   Code, secs. 3899, 3905 ; Hare on Discovery, 65, *et seq.;* Story, Eq. Pl., secs. 234, 570, 569, 239 ; 1 Daniels' Ch. Pl. & Pr. 179 ; *Wych v. Meal,* 3 P. Will. 310 ; *Fenton v. Hughes,* 7 Ves. 287 ; *Moodalay v. East India Co.,* 1 Bro. C. C. 469 ; *Gibbons v. Bridge Co.,* 5 Price, 491 ; *Dummer v. Corp. of Chippenham,* 14 Ves. 245 ; *How v. Best,* 5 Mad. 19 ; *Glascott v. 'Copper Miners' Co.,* 11 Sim. 305 ; *Le Texier v. Margrave of Auspach,* 5 Ves. 322 ; *Many v. The Beekman Iron Co.,* 9 Paige, Ch. R. 188 ; *Wright v. Dame,* 1 Metc. 237 ; *Green v. Woods,* 34 Iowa, 573. The court erred in overruling defendant's motion to retax costs.   *Sprout v. Kelly,* 37 Iowa, 44 ; *Meffert v. Railway Co.,* 34 Iowa, 430 ; *Kuhulee v. Ind. Dist., etc.,* 36 Iowa, 99.

*Alanson Clark,* for appellees :   The cause of action against the defendant is independent of any statute, and is based upon the common-law rule.   The action is to recover freights paid in excess of the reasonable rates.   Under certain circumstances discriminations may be made, and they may be reasonable and just. 1 Wood's Railway Law, 565–6.   The common law prohibits extortionate rates and unjust discriminations, and requires that the carrier shall demand only a reasonable compensation, and treat competing shippers alike, and prevents their making unjust discriminations.   The fact that the high rate charged was not unreasonable does not affect the discrimination.   *Samuels v. L. N. Co.,* 31 Fed. Rep. 57.   Railways cannot discriminate in favor of or against the tariff, because of its ultimate use.   *M. S. & L. Ry. Co. v. D. C. Co.,* 4 Eng. Railway & Canal Cases, 437, 452 ; *Oxlade v. M. E. R. Co.,* 1 Nev. & Mac. 72.   Nor can they discriminate against a local shipper by depriving him of any material advantages.   *Ransome v. Railway Co.,* 1 Nev. & Mac. 109 ; *D. M. C. Co. v. M. S. & L. R.,* 3 Nev. & Mac. 426.   Nor can rates be given to one shipper and refused to another on capricious, arbitrary and unreasonable grounds.   *Budd v. L. N. W. R.,* 4 Eng.

Railway & Canal Cases, 399.   Nor can it discriminate in favor of one local shipper, and against his competitors, unless there be some substantial difference in the cost of the service.   *Garton v. Railway Co.*, 1 Nev. & Mac. 218; *Thompson v. Railway Co.*, 2 Nev. & Mac. 115; *Railway Co. v. Evershed*, 3 App. Cases, 1029; *Stuck v. S. C. Co.*, 16 C. B. (N. S.) 245; *Ransome's Case*, 1 Nev. & Mac. 97; *Nicholson's Case*, 1 Nev. & Mac. 121. The original charge may have been a reasonable toll, but it straightway became an unreasonable and extortional one when a less rate was granted to the competitor for one and the like service under similar conditions. *Messenger v. Railway Co.*, 7 Vroom, 407; s. c., 8 Vroom, 531.   Upon the foregoing points see *Winona v. Blake*, 4 Otto, 183; *Alcott v. Bonfield*, 4 N. H. 537; Story on Bailments, sec. 508; *Halford v. Adams*, 2 Durr. 480; *N. E. Co. v. M.*, 57 M. 188; *Vincent v. Chicago*, 49 Ill. 33; Brown's Law of Carriers, 82; *Shipper v. Railway Co.*, 47 Pa. St. 338; *Mun v. Illinois*, 4 Otto (U. S.) 113; *Sanford v. Cottainess*, 25 Pa. St. 376; *Railway Co.'s Appeal*, 62 Pa. St. 218; *Ragan v. Aiken*, Am. & Eng. R. R. Cases, 201; *H. & T. Ry. Co. v. Rust*, 58 Tex. 98; *Merriam v. Railway Co.*, 20 Conn. 353; *Jordan v. Railway Co.*, 5 Cush. 69; *N. J. S. N. Co. v. Merchants' Nat. Bk.*, 6 How. 344; *McDuffee v. Railway Co.*, 52 N. H. 445; *Sloan v. Railway Co.*, 61 Mo. 24; *N. E. Co. v. Railway Co.*, 57 Me. 194; Pierce on Railroads, 498, and authorities cited; *Cole v. Goodwin*, 19 Wend. 261; *Railway Co. v. Erickson*, 91 Ill. 613; *Railway Co. v. Railway Co.*, 15 Fed. Rep. 650, and note; *Hays v. Railway Co.*, 12 Fed. Rep. 490, and note.   All special stipulations inserted in the charter of the common carrier for the purpose of securing equal rights to all shippers, as well as statutes passed regulating the same subject, and preventing unjust discriminations, affirm nothing more than the common rights of equal justice, which exists independently of such provisions.   *Sanford v. Railway Co.*, 24 Pa. St. 378; *Sharpless v. Philadelphia*, 9 Harris, 169; *Navigation Co. v. Bank*, 6 How.

382; *Shipper v. Railway Co.*, 47 Penn. St. 338; *Railway Co. v. Rust*, 58 Tex. 98; *New Eng. Express Co. v. Railway Co.*, 57 Me. 188; *McDuffy v. Railway Co.*, 52 N. H. 430; *Messenger v. Railway Co.*, 36 N. J. Law, 407; s. c., 37 N. J. Law, 531. The payments made by the plaintiffs were not voluntary. *Heiserman v. Railway Co.*, 63 Iowa, 732.

ROTHROCK, C. J.—I. The action is not founded upon any statute, state or federal. The right to recover is based entirely upon the common law pertaining to the duties and obligations of common carriers. By an amended and substituted petition the plaintiffs claimed unlawful and unjust overcharges upon the shipment of three hundred and sixteen carloads. Each shipment was pleaded in a separate count as a separate cause of action. All of the accounts were alike except in dates of shipment, cars and kind of stock shipped, and stations from which the shipments were made. It is averred, in substance, in the amended petition, that the public tariff rates for shipment of live stock, from any point in Jasper county during the time the plaintiffs made such shipments, was sixty dollars for one carload; that the plaintiffs paid the full amount of said rates, and that certain other shippers (who are named in the petition) also paid the full tariff rates; but that said other shippers were allowed, and defendant paid to them, a rebate or drawback upon each carload shipped by them, which rebate or drawback was paid by defendant to said shippers, under a private and secret arrangement between the defendant company and said shippers; and that the knowledge of the payment of such rebates was wrongfully and fraudulently concealed from the plaintiffs by the defendant, and said other favored shippers; that the agents of the defendant openly announced and declared to the plaintiffs that the public and announced tariff paid by the plaintiffs was correct, and that no cut, rebate or concession from the same was allowed to any

*Margin note: 1. Common carriers: freight charges: rebates.*

shipper, and that the plaintiffs, by reason of said wrong-
ful and fraudulent agreement, did not and could not
have discovered it, and they shipped their stock in the
belief that no unjust discrimination was made against
them.   It is charged that the shipments made by the
plaintiffs, and those made by the said favored shippers,
were for precisely the same service, from the same
places, upon like conditions, and under precisely the
same circumstances, and that the rate charged by the
defendant and paid by the plaintiffs was unreasonable,
extortionate, and unjust, and that it was an unjust dis-
crimination between shippers for the same service under
like circumstances.

Before proceeding to a determination of what we
regard as the material question in the case, we will first
dispose of a question pertaining to the power of the
referee.   The petition in the case was twice amended
after the cause was referred.   The reference was made
by agreement of the parties before any issue was made
or tendered in the case.   The order of submission was
as follows:   "By agreement of parties this cause is
referred to D. Ryan, with power to settle issues, and try
and hear the cause, and report the facts and conclusions
of law."   After the reference was made, the parties
appeared before the referee, and the issues were made
up.   The amendments to the petition were very volu-
minous, and there were certain interrogatories attached
to the petition, which interrogatories the plaintiffs
demanded should be answered by certain persons claimed
to be general officers of the defendant, and a rule was
asked that the defendant be required to produce certain
books and papers.   In other words, the plaintiffs sought,
by about all the means known to the law, to compel the
defendant to disclose the facts as to the alleged discrim-
ination between shippers.   All these movements were
resisted by the filing of motions and demurrers, attack-
ing the pleadings, and by refusing to produce its books
and papers, and by failing to make full answers to the
special interrogatories, and for such failure the referee

ordered that the petition be taken as true, except so far as its averments were modified by the evidence introduced on the trial. It is claimed in behalf of the defendant that, under our practice, a referee has no power to make the orders which the referee made with reference to the failure to produce books and papers, and the failure to answer the special interrogatories. We do not think it is proper to determine what power a referee may have in these respects, for the reason that there is really not a disputed question of fact in the case. The evidence of the witnesses introduced by the plaintiffs establishes the facts pleaded in the petition without conflict. The defendant did not introduce any evidence; and, if the facts pleaded entitle the plaintiffs to recover, it would have been clearly against the undisputed evidence to have made a finding for the defendant. We will now state, as briefly as may be, the substance of the evidence.

It appears that one E. R. Clapp was an employe of the defendant. He was located at Des Moines, and was known among shippers of live stock as the Iowa stock-agent of the defendant. Clapp was frequently along the railroad in conference with shippers of live stock. He held this position during the time that the plaintiff made the shipments set forth in their petition. There were a number of shippers of live stock in and about Newton, the principal station on the defendant's road in Jasper county. During nearly the whole time covered by this action, the tariff rate for shipment of live stock from Newton to Chicago was sixty dollars per carload. It was practically the same from the stations next east and west of Newton. There was at times a slight difference, but not enough to be a material fact in the case. The freight charges, as given by the defendant to its station agents, were for the most of the time sixty dollars per carload, and this rate was given out by station agents to shippers as the charge made by the defendant. All of the carloads sent forward by all the shippers were billed by the agents at the full rate

given out by the company. The stock was shipped in the usual manner. No part of the freight charges were in any case paid at the place of shipment. The cars were billed to commission houses at the Union stockyards. The stock was sold by the commission men, and, after taking out their commissions and paying the freight, the balance of the proceeds of the sales was remitted to the shipper. This was the uniform manner of transacting the business. All of the shippers were dealt with in exactly the same manner until the stock was sold, and the regular freight charges paid. There was no difference in the manner of the service. All of the shippers were given the same kind of cars, and the stock shipped by the plaintiffs was conveyed in the same kind of trains, and on the same time, and with the same privileges as to the free transportation of one or more men to take care of the stock while in transit. In short, the plaintiffs had no preference over other shippers in any respect. It appears without conflict that at least three other firms or individuals engaged in the same business at the same place, and in competition with the plaintiffs, had private and secret agreements with Clapp, the said stock agent, by which they were paid a rebate of from three to twenty dollars on each carload shipped. These agreements were not uniform at all times. The amount to be paid varied just as the parties were able to agree upon the terms. So far as appears, Clapp always performed the contracts. He paid the rebates sometimes in currency, at other times by sending the money to the shippers by express. There were short intervals during the time that no rebates were paid. But these intervals were the exception and not the rule. And Clapp always exacted a promise from the favored shippers that the fact of the payment of rebates must be kept secret. We have not made a careful estimate of the number of carloads shipped by the favored shippers. Indeed, no exact estimate could be made from the evidence. It is shown, however, beyond all question that not less than eighteen hundred

carloads, in the aggregate, were shipped by the favored shippers. The plaintiffs made application to Clapp for better terms, and were refused. He invariably stated in most positive terms that no rebates nor concessions were allowed to any of the plaintiffs' competitors. The referee found that the plaintiffs were entitled to recover on part of the shipments at the rate of three dollars per car, and on others at five dollars, and on the remainder at the rate of ten dollars per car. The aggregate amount found to be due, including interest, was twenty-seven hundred and thirty-three dollars and ninety-eight cents. If the plaintiffs are entitled to recover on the ground of unjust discrimination, the evidence shows beyond all controversy that the judgment is not excessive. Indeed, we do not understand appellant's counsel to claim that the judgment is excessive.

The real question in the case is, do the facts above recited authorize a recovery on the part of the plaintiffs? It is well to keep in mind the fact that the defendant is a public common carrier. At common law a public or common carrier is bound to accept and carry for all upon being paid a reasonable compensation. The fact that the charge is less for one than another is only evidence to show that a particular charge is unreasonable. In Story on Bailments, section 508, note 3, it is said : "There is nothing in the common law to hinder a carrier from carrying for favored individuals at an unreasonably low rate, or even *gratis.*" And in 1 Wood, Railway Law, 566, it is said: "A mere discrimination in favor of a customer is not unlawful, unless it is an unjust discrimination." In volume 2, page 95, Redfield on Law of Railroads, the following language is used: "It has been held in this country, where there is no statutory regulation affecting the question, that common carriers are not absolutely bound to charge all customers the same price for the same service. But as the rule is clearly

established at common law that a carrier is bound by
law to carry everything which is brought to him, for a
reasonable sum to be paid to him for the same carriage,
and not to extort what he will, it would seem to follow
that he is bound to carry for all at the same price,
unless there is some special reason for the distinction.
For, unless this were so, the duty to carry for all would
not be of much value to the public, since it would be
easy for the carrier to select his own customers at will
by the arbitrary discrimination in his prices.    Hence,
it was held at an early day that all that could be
required on the part of the owner of the goods by way
of compensation, was that.he should be ready and will-
ing to pay a reasonable compensation, and to deposit
the money in advance, if required.    Carrying for rea-
sonable compensation must imply that the same com-
pensation is accepted always for the same service, else it
could not be reasonable, either absolutely or relatively."
In Hutchinson on Carriers, 243, after a review of the
cases, it is said:    "Hence we may conclude that in this
country, independently of statutory provisions, all com-
mon carriers will be held to the strictest impartiality in
the conduct of their business, and that all privileges
or preferences given to one customer, which are not
extended to all, are in violation of public duty."    An
examination of the authorities cited by these learned
authors leaves no doubt that a common carrier has no
right to make unreasonable charges for his services, and
that he cannot lawfully make unjust discrimination
between his customers.    It is strenuously contended by
counsel for appellant that it is not charged in the peti-
tion as a substantial fact that the rate charged the
plaintiffs was unreasonable.    It is distinctly averred
that the rate charged the plaintiffs "was unreasonable,
and is and was an unjust discrimination."    This
appears to us to be a sufficient answer to the argument
of counsel to the effect that the action is founded solely
upon the fact of mere difference in rates.    It appears to
be conceded that the defendant had no right to exact

unreasonable rates or to make unjust discriminations between shippers which in effect compels one shipper to pay an unreasonable rate.

The above principles of law may be said to be fundamental, and it is only necessary to apply the facts to reach the conclusion that the rates paid by the plaintiffs were unreasonable and unjust discrimination. It is not claimed that the favored shippers were objects of the charity of the defendant. The payment of the rebates cannot be designated as "alms-giving." It does not appear that the concessions were made because the favored shippers furnished more shipments than the plaintiffs. The fact is that some of the others shipped less than the plaintiffs. In short, there is no reason for the discrimination. It is true that it is claimed that the rebate shippers bought cattle and hogs from territory in which shipments would ordinarily be made upon other railroads, but the evidence shows that the plaintiffs' field of operation was about the same as the other shippers. It does not appear that the rebates were allowed merely at times when there were cut rates or a war of rates between the defendant and rival railroad lines. The rebates were paid regularly for years, with but short intervals. Is it to be supposed that any court or jury under this state of facts would solemnly find, declare and adjudge that, after paying the rebate, the defendant did not have a reasonable compensation for the service? The only finding that can in any fairness be made is that, after deducting the rebate, the rate was reasonable; and that the exaction from the plaintiffs was unreasonable, and the discrimination against them unjust. And the fact that it was secretly done, and that it appeared to be necessary to carry it on by lying and deceit, surely does not tend to commend such a course of dealing to fair-minded men. We have been cited to a number of adjudged cases, by counsel for the respective parties, and we think we may safely say that not one of them is in conflict with the views we have herein expressed upon this question.

On the contrary, and in support of our conclusion, see *Sharpless v. Mayor*, 21 Pa. St. 147; *New England Exp. Co. v. Maine Cent. Ry. Co.*, 57 Me. 188; *McDuffee v. Portland & Rochester Ry. Co.*, 52 N. H. 430; *Messenger v. Penn. Ry. Co.*, 36 N. J. Law, 407.

II. It is claimed in behalf of appellant that the payments by the plaintiffs were voluntarily made, and cannot be recovered back. It is true, the money was paid without duress of person or goods, but it was paid, not only without knowledge that it was a wrongful exaction, but in the belief of the truth of the positive assertions of Clapp that no shipper was allowed any rebate. That such a payment is not voluntary, see 1 Pars. Cont. 466, and *Heiserman v. Burlington, C. R. & N. Ry. Co.*, 63 Iowa, 732.

2. ——: ——:
——: voluntary payment

III. The defendant pleaded the statute of limitations, as to part of the claim. The same question was considered in the case of *Carrier v. Chicago, R. I. & P. Ry. Co.*, 79 Iowa, 80, where it was held that the statute of limitations was no bar to the action. Following that case we hold that the statute did not commence to run while the plaintiffs had no knowledge of their rights in the premises, owing to the fraudulent concealment of the cause of action by the defendant.

3. ——: ——:
——: ——:
limitation of actions.

IV. The defendant also appeals from an order overruling a motion to retax costs in the case. It appears that the sum of five hundred and eighty-two dollars was taxed as costs for copies of the petition and the several amendments thereto. It is shown by evidence taken on the hearing of the motion that the petitions and copies thereof were printed at an expense of not to exceed thirty dollars. The action of the court in taxing this erroneous item of costs was founded upon rule 1 of the rules of practice adopted by the convention of district judges, which went into effect July 4, 1887. The following is a copy of the rule : "Every

4. District court rules: copies of pleadings: excessive fees.

party at the time of filing any petition, answer, reply, demurrer or motion   *   *   *   shall file with the same one plain copy thereof for the use of the adverse party ; and, on failure to do so, the same may be continued at the option of the adverse party, or the paper so filed stricken from the files.   A fee of ten cents per hundred words shall be allowed for all copies, and taxed with the costs.''   Substantially the same rule was in force in some of the districts of this state for many years before it was adopted by the convention of judges.   We are of opinion that such a rule of practice is valid, and that it was within the power of the judges to authorize costs to be taxed therefor, but it surely was not intended that the rule should be made an instrument of oppression. There is no requirement that a literal copy of all the pleadings should be made, when such pleadings are precisely alike, excepting, possibly, a date, an amount or the like.   The purposes of the rule would have been fully subserved by a copy of one count, with a mere reference to the others.   The court ought to have the discretion to prevent speculative and unnecessary costs. This item of costs will be reduced to fifteen dollars. The rule surely ought not to apply literally to petitions like this.

V.   The plaintiffs also appealed from the judgment; but, if the judgment be affirmed on the defendant's appeal, they consent that it may be affirmed on their appeal.   The judgment will, therefore, be affirmed throughout, with the exception as to the item of costs, as above mentioned.   And as the defendant was successful on that branch of the appeal, twenty-five dollars of the costs in this court will be taxed to the plaintiffs ; and the plaintiffs will also be taxed twenty-five dollars by reason of the affirmance of their appeal. These assessments appear to us, from an examination of the abstracts and arguments, to be about correct. MODIFIED AND AFFIRMED.