MURRAY v. CHICAGO & N. W. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. February 27, 1899.)

No. 616.

1. COMMON LAW—APPLICATION TO MATTERS OF FEDERAL JURISDICTION.
    The federal courts may resort to the common law as their guide, in cases where it is applicable.

2. CIRCUIT COURTS OF APPEALS—JURISDICTION.—CONSTITUTIONAL QUESTIONS.
    A constitutional question is not presented in a case where the court has occasion to apply the rules of the common law regulating transportation charges, whether or not the carriage be interstate.

3. FEDERAL COURTS—FOLLOWING STATE DECISIONS—LIMITATION OF ACTIONS.
    The conclusion of a state court as to the time when a cause of action accrues, in case of fraud or concealment, is not binding on the United States courts, when based, not on a construction of a state statute, but on the view taken of the rule of the common law.[1]

4. STATUTES OF LIMITATION—OPERATION—EXCEPTIONS.
    Where a statute of limitations makes no exceptions, the courts can make none.

5. SAME—FRAUD AND CONCEALMENT—CARRIERS.
    An action by a shipper against a carrier for unjust discrimination in the imposition of freight charges paid by plaintiff lies at common law, regardless of fraud, and the carrier's fraudulent concealment of the cause of action does not bring it within Code Iowa, § 2530, providing that, in actions for relief on the ground of fraud, the cause of action does not accrue until the fraud is discovered.

6. SAME—DISCOVERY OF CAUSE OF ACTION—DILIGENCE—PLEADING.
    Where an action by a shipper against a carrier for unjust discrimination in the imposition of freight charges paid by plaintiff is commenced more than five years after the cause of action accrued, that being the period of limitation, it is not brought within an exception of the statute by an allegation that defendant fraudulently concealed the cause of action, and that plaintiff had no reason to suspect that the statements of defendant's agents of the regularity and uniformity of the charges were false, or that he had been discriminated against, until within 18 months of the commencement of the action; the petition should show what plaintiff discovered within the 18 months, how he discovered it, and why he did not discover it sooner.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

This is an action by William Murray against the Chicago & Northwestern Railway Company. A demurrer to an amended petition was sustained (62 Fed. 24), and plaintiff brings error.

This is an action to recover damages for overcharges on freight. The material allegations in the petition are that commencing in 1875, and continuing to March, 1887, plaintiff was engaged in buying and shipping live stock and grain purchased in the state of Iowa for shipment to Chicago, Ill.; that he made large shipments during that time over the defendant's road from Belle Plaine and Chelsea, Iowa, to Chicago; that defendant demanded and plaintiff paid to it for these services the regular published tariff rates of freight; that in selling these articles in Chicago the plaintiff was compelled to come into competition with the sale of like articles shipped over defendant's line from said stations and others in the vicinity shipped over defendant's line; that, at the time these various shipments were made by plaintiff, defendant was engaged in making and paying drawbacks, rebates, and con-

---

[1]As to conforming federal practice in common-law actions to practice of state court, see note to O'Connell v. Reed, 5 C. C. A. 594.

cessions of freight charges to others shipping like character of freight, and under the same circumstances and conditions, over the same line of road, as were shipped by plaintiff, and from the same stations, to an amount equal to $32 per car load; that the freight carried by defendant for others was carried under the same circumstances and conditions as that transported for plaintiff; that defendant, at the time these shipments were made by plaintiff, kept posted at its stations freight tariff lists showing the tariff rates of freight for the transportation of such articles from its stations to Chicago, and informed plaintiff at the time he made his shipments that no deviations were made from these rates, and no rebates, drawbacks, or concessions from the posted rates were made to any shippers, and that plaintiff had equal rates and proportions of rates with other shippers from its stations to Chicago, and that no discriminations were made against him; that plaintiff believed these statements and relied on them, but that they were untrue and fraudulent, and that defendant was in fact at that time making such discriminations in favor of other shippers; that defendant fraudulently concealed that fact as to the giving of rebates; that plaintiff only ascertained the facts within 18 months before bringing suit. The circuit court sustained the demurrer to the petition upon the ground that the action was barred by the statute of limitations. On this point Judge Shiras, who heard the case at the circuit, said: "The ordinary rule is that the statute begins to run when the right of action is completed. Does the case fall within any exception to this rule? The provision of the statute applicable to the case is the general one, to wit, 'and all other actions not otherwise provided for in this respect, within five years.' Code Iowa, § 2529. By Id. § 2530, it is declared that, 'in actions for relief on the ground of fraud or mistake, and in actions for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake or trespass complained of shall have been discovered by the party aggrieved'; but it is settled that this statutory exception is not applicable to cases of the character of that now under consideration. Boomer Tp. v. French, 40 Iowa, 601; Carrier v. Railway Co., 79 Iowa, 80, 44 N. W. 203. It is, however, claimed by plaintiff that, under the principles of the common law, it will not be held that the cause of action has accrued until actual discovery of the fraud or concealment has been made. In Boomer Tp. v. French, supra, the supreme court of Iowa held that where a treasurer of the district, by false and fraudulent entries upon his books, concealed the fact of a misappropriation of a sum of money coming into his hands, the statute did not begin to run until discovery of the fraud thus practiced. In Carrier v. Railway Co., supra, the supreme court of Iowa held the common-law exception applicable, upon the authority of Boomer Tp. v. French; stating, however, that, 'if the question was before us for the first time, we might hesitate to declare the rule announced in Boomer Tp. v. French.' The conclusion reached in Carrier v. Railway Co. is followed and affirmed in Cook v. Railway Co., 81 Iowa, 551, 46 N. W. 1080. These decisions are based, not upon a construction of the provisions of the Iowa statute, but upon the view therein taken of the rule of the common law; and the conclusion reached is not, therefore, binding upon the courts of the United States when they are called upon to construe the common law, and apply its principles to cases arising between citizens of different states. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 62 Fed. 24, 44."

Henry Rickel (E. H. Crocker and J. R. Christie, on the brief), for plaintiff in error.

Lloyd W. Bowers (N. M. Hubbard, F. F. Dawley, N. M. Hubbard, Jr., and Robert Mather, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge (after stating the facts). At the threshold of this case we are confronted with a question of jurisdiction. It is said this is a case that involves the construction of the constitution of the United States, for the reason that the case pre-

sents the question whether there is any common law of the United States regulating interstate transportation charges, and that the writ of error should have been issued from the supreme court of the United States, and not from this court. Some phases of this question have recently been much discussed in other jurisdictions, and were fully considered by the learned trial judge in this case. 62 Fed. 24. We do not feel called upon to indulge in any extended consideration of the question. For more than a century the federal courts, in the absence of a statute or other obligatory rule of decision, have had recourse to the common law for rules of decision in the trial of causes in those courts, and have, in cases where that law furnished an appro-·priate rule of decision, rested their judgments upon it. The same may be said of the admiralty law, the law merchant, the principles of equity jurisprudence, and, in a restricted and qualified sense, of the civil law. It never was supposed that the federal courts were denied the privilege of resorting to any or all of these sources of information for the purpose of enlightening their judgment upon any question presented for their determination in the trial of a cause. It has always been assumed that the federal courts were endowed with a power and jurisdiction adequate to the decision of every cause, and every question in a cause, presented for their consideration, and of applying to their solution and decision any rule of the common law, admiralty law, equity law, or civil law applicable to the case, and that would aid them in reaching a just result, which is the end for which courts were created. If a case is presented not covered by any law, written or unwritten, their powers are adequate, and it is their duty to adopt such rule of decision as right and justice in the particular case seem to demand. It is true that in such a case the decision makes the law, and not the law the decision, but this is the way the common law itself was made and the process is still going on. A case of first impression, rightly decided to-day, centuries hence will be common law, though not a part of that body of law now called by that name. It was implied in the very act of their creation that the federal courts would appeal to the common law as their guide in cases where it was applicable. A decision rested on that law no more raises a constitutional question than a decision based on the law merchant, the admiralty law, the equity law, or on the recognized and fundamental principles of right and justice in a case of first impression. We are all of the opinion that a constitutional question is not presented every time the court has occasion to apply the well-settled rules of the common law regulating and defining the rights, duties, and obligations of common carriers, whether the carriage be intrastate or interstate.

The suit was begun on August 25, 1892, more than 17 years after the first, and more than five years after the last, shipment had been made by the plaintiff. A demurrer was filed to the petition setting up several causes, but as the court below only sustained the plea of the statute of limitations of five years, and rendered judgment on that ground, it is unnecessary to notice the other grounds.

Is the action barred? The statute of Iowa applicable is section 2529, Iowa Code, which reads:

"The following actions may be brought within the times herein limited respectively after their causes accrue and not afterwards except when otherwise specially declared: * * * (4) Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in causes heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years."

The statute makes no exception of causes of action founded in a fraud which is undiscovered, but the supreme court of that state in several cases has held that, according to the rules of the common law, a case in which the cause of action is concealed is excepted from all statutes of limitations until the cause is, or by due diligence could have been, discovered. Boomer Tp. v. French, 40 Iowa, 601; Carrier v. Railroad Co., 79 Iowa, 80, 44 N. W. 203; Cook v. Railway Co., 81 Iowa, 551, 46 N. W. 1080.

As these decisions do not attempt to construe state statutes, but are expressly based on the supposed rules of the common law, they are not binding on the courts of the United States. As early as 1842 the supreme court in Swift v. Tyson, 16 Pet. 1, held "that the thirty-fourth section of the judiciary act of 1789 is limited in its application to state laws strictly local, and does not extend to contracts or other instruments of a local nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence." In Chicago City v. Robbins, 2 Black, 418, which was an action for injuries caused by the negligence of Robbins in permitting an excavation in the sidewalk to remain uncovered and unguarded, so that a person passing by there was injured and had recovered a judgment against the city for the injury suffered, it was urged that in such cases it was the duty of the United States courts to follow the decisions of the state courts, but the supreme court said: "Where private rights are to be determined by the application of common-law rules alone, this court, although entertaining for state tribunals the highest respect, does not feel bound by their decisions." In Levy v. Stewart, 11 Wall. 244, on error from the circuit court for the district of Louisiana, it was claimed that, the supreme court of that state having held in several cases that the Civil War did not interrupt the running of the statute, the federal courts are bound by those decisions, but the court said: "None of these decisions are founded upon any express enactment, and the reasons assigned for the conclusions are not satisfactory. * * * Authorities of the kind, though entitled to great respect, are not obligatory, and the court is of the opinion that the rule adopted in the case of Hanger v. Abbott, 6 Wall. 534, is more in accordance with the analogies of our law." The supreme court of the state of Arkansas held that the statute of limitations of that state was not suspended by the Civil War, although that was one of the states in insurrection (Bennett v. Worthington, 24 Ark. 487); but in the case of Hanger v. Abbott, supra, the supreme court of the United States held the statute of limitations of that state was suspended during the Civil War. Subsequently the supreme court of that state adopted and followed the ruling in Hanger v. Abbott. In Railway Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, the question before the court was the effect to be given to the decisions

of the supreme court of Ohio in determining whether two employés were fellow servants, and the court said: "An examination of the opinions in the cases in the Ohio supreme court which are claimed to be authoritative here discloses that they proceeded, not upon any statute, or upon any custom or usage, or upon anything of a local nature, but simply announced the views of that court upon the question as one of general law. We agree with that court in holding it to be a question of general law, although we differ from it as to what the rule is by that law." In Clark v. Bever, 139 U. S. 96, 11 Sup. Ct. 468, the court said "that the federal courts sitting in any state have equal and co-ordinate jurisdiction with the state court in determining questions of general law, although they will lean towards an agreement of views with the state court if the question seems to them balanced with doubt." At common law it is well settled that, where the statute makes no exceptions, courts can make none. Amy v. Watertown, 130 U. S. 320, 9 Sup. Ct. 537; Jones v. Lemon, 26 W. Va. 629; Bennett v. Worthington, 24 Ark. 487.

The Iowa statute makes no exceptions, and the exception we are asked to ingraft upon it is not one that can be made by the court. The plaintiff's cause of action is not founded on fraud; for, if the allegations as set out in the petition are true, he has a good cause of action, independently of any fraud or concealment. The unjust discriminations, and their payment by plaintiff, constitute the cause of action, regardless of the fraud and deceit, and, independent of any statute, the common law gives him the right to recover in such a case. State v. Railway Co., 47 Ohio St. 130, 23 N. E. 928; Railway Co. v. Wilson, 132 Ind. 517, 32 N. E. 311; Fitzgerald v. Railway Co., 63 Vt. 169, 22 Atl. 76; Cook v. Railway Co., 81 Iowa, 551, 46 N. W. 1080.

But suppose the holding in the Iowa cases to be obligatory upon this court, the plaintiff's action is still barred, because no sufficient reason is shown why the alleged fraud was not sooner discovered, or that any effort was ever made to discover it. In cases where concealment and ignorance of the facts suspend the statute, there must have been such concealment as would prevent a person exercising due diligence from discovering the facts, and what diligence was used is a question of law, to be determined by the court from the petition, and not a mere statement of a conclusion of law. The allegation of the petition is that "the plaintiff had no reason to believe or suspect that said statements, made to him as aforesaid, were untrue, or that he had been discriminated against, and deceived as aforesaid, until within the eighteen months last past, when for the first time he learned of such facts." Just such a general allegation as this was held bad in Wood v. Carpenter, 101 U. S. 135, where the rule on this subject is succinctly and clearly stated. "Statutes of limitations," say the court, "are vital to the welfare of society and are favored in the law. They promote repose, by giving security and stability to human affairs. While time is constantly destroying the evidence of rights, they supply its place by presumption, which renders proof unnecessary. * * * A general allegation of ignorance at one time, and of knowledge at another, are of no effect. If the plain-

tiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. * * * Whatever is notice enough to excite suspicion, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. * * * Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence, and the means of knowledge are the same thing, in effect, as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence." The allegation in the petition in this case amounts to no more than "ignorance at one time and knowledge at another." The petition does not state what he discovered, how he discovered it, or show any reason why he did not discover it sooner. There is no allegation that he ever, at any time, made the slightest effort to discover whether he was being discriminated against, and there is no averment that such an effort would have been unavailing. The suspicion entertained by the public generally, and which found daily expression in the public prints, and an occasional judicial verification, and which was probably the origin of the interstate commerce act itself, that railroad companies did discriminate between shippers, particularly in shipments of the character the plaintiff was making, seems not to have shaken the plaintiff's perfect faith in the veracity of the railroad agent who billed his shipments. From a moral point of view, it may be that such credulity and trustfulness is a virtue, but it falls far below the standard of diligence required by law; that standard is what a reasonably prudent business man would do under like circumstances. There were numerous avenues of information open to one in the plaintiff's situation. He does not show that he ever sought information from other shippers or their agents, or commission merchants, or others having knowledge of the subject. In a word, he did nothing whatever, and how, finally, he made the discovery he declines to disclose. The judgment of the circuit court is affirmed.