## YAZOO & M. V. R. Co. v. SCOTT.

### [67 South. 491.]

1. COMMON LAW. *What constitutes. Appeal and error. Partial re-
versal. Issue of damages. New trial. Conditions on granting.
Terms. Condition. Statutory authority. Repeal by statute.
Constitutional law. Due process.*

   The common law consists of those principles and rules of action
   which have been from time to time adopted and acted upon
   by the courts when administering justice in cases not governed
   by any written law, arising out of the private disputes of individ-
   uals.

2. APPEAL AND ERROR. *partial reversal. Issue on damages.*

   At common law in a civil action, the supreme court on appeal
   has the power to award a new trial on the issue of damages alone.

3. NEW TRIAL. *Conditions on granting. Terms. Condition.*

   Under Hutchinson's Code, chapter 61, section 73, providing that
   every new trial granted at law shall be on such "terms and condi-
   tions" as the court shall direct and under Code 1906, section
   800, providing that every new trial granted shall be on such
   "terms" as the court shall direct. The words "terms and condi-
   tions" are synonymous; terms meaning propositions, limita-
   tations, or provisions stated or offered, and a "condition" is that
   which limits or modifies the existence or character of something;
   a restriction or qualification.

4. APPEAL AND ERROR. *Partial reversal. Issue of damages. Statutory authority.*

Under Code 1906, section 800, which relates to the circuit courts, but is made applicable to the supreme court by sections 4909 and 4919, it is provided that every new trial granted shall be on such terms as the court shall direct and under section 4919 which empowers the supreme court to render judgment such as the trial court should have rendered, unless necessary that damages be assessed by a jury, and that on remand the trial court shall proceed according to directions of the supreme court, the supreme court has power to award a new trial on the issue of damages only.

5. COMMON LAW. *Repeal by statute.*

When any rule or principle of the common law is by the legislature partially incorporated into a statute, the remainder of the rule is not thereby repealed or annulled.

6. APPEAL AND ERROR. *Partial reversal. Code 1906, sections, 4944-4945.*

If Code 1906, sections 4944-4945, by the rule of "*expressio unius est exclusio alterius*," prohibits the supreme court from granting a new trial on the issue of damages only, this would not effect such right if it existed by some other law.          .

7. JURY. *Right to trial by. Partial reversal.*

Constitution 1890, section 31, making the right of trial by jury inviolate is not violated by the supreme court granting a new trial on the issue of damages only.

8. SAME.

Nor does it deprive an appellant of property without due process of law for the supreme court to reverse a case and grant a new trial on the issue of damages only.          .

9. APPEAL AND ERROR. *Remand for new trial. Evidence on new trial.*

Where the supreme court on appeal remands a case to the lower court on the issue of damages only, evidence as to liability is inadmissible on a new trial.          .

APPEAL from the circuit court of Warren county. HON. H. C. MOUNGER, Judge.

Suit by Henry Scott against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

"Rule 13.—New Trial as to Damages Only.—When a judgment is reversed and a new trial ordered because the damages are excessive or inadequate, and for no other reason, such judgment shall be set aside only in respect of damages and shall stand good in all other respects."

See 102 Miss. 905, 59 So. ix.

*Mayes & Mayes, Chas. N. Burch* and *H. D. Minor,* for appellant.

When this case was reversed and sent to the trial court we offered pleas and evidence to disprove our liability but the trial court would not hear it, and the case went to the jury under the instruction of the court on the evidence of plaintiff as to the injury and damage alone.

First. The Rule violates section 31 of the Constitution of the state. *Smith* v. *Smith,* 1 Howard, 102; *Isom* v. *Mississippi Central Ry. Co.,* 36 Miss. 300; *Lewis* v. *Garrett,* 5 Howard, 434; *Pock* v. *Critchlow,* 7 How. 243; *Scott* v. *Nichols,* 27 Miss. 94; *Aldridge* v. *Bogue Phalia Drainage Company,* 64 So. 377; *Slocum* v. *New York Life Ins. Co.,* 57 La. Ed. 879; and *Traction Co.* v. *Hof,* 174 U. S. 1, 13, 43 L. Ed. 873, 877, 19 Sup. Ct. 580.

Second. Has the court power to pass the rule without violating the statute law of the state? Our second contention is that the court not only had no power to pass the rule but is excluded from so doing by the statute law of the state. In the absence of any statute the court has the inherent power to make rules regulating the practice before the court. The law on this subject is well stated in 11 Cyc. 740. It is there stated that: "The court has the inherent power, in the absence of any statute, to make rules for the regulation of their practice and conduct of business, subject, however, to the limitation that a court can make no rule which is unreasonable, which deprives a party of his legal rights,

or which is in contravention of the statute or of the common law of the land.

This authority further states that "only such matters as are not regulated by general or special laws with reference to practice or procedure may be regulated by a rule of court."

The authorities hold that the court can make no rule which is unreasonable or which deprives a party of his legal right.

Recurring now to our statute we will examine all the power which the court has been given by the legislature. Section 4914 of the Code provides that: "The supreme court may prescribe the mode of pleading in causes therein, civil and criminal, and the manner of trying the same; and may also establish such rules of practice and proceedings therein as may be deemed necessary and proper for certainty and dispatch of business, etc.; but such rules must be consistent with law."

This statute is an expression from the legislature limiting the power of the court to adopt rules and declaring what rules they may make. By this section the power of the court to make these rules extends only to the mode of pleading, the manner of trying cases, and the rules of practice and proceedings to be pursued in the supreme court. When the legislature has specified the things which the court can do by rules, the statute necessarily prohibits the court from assuming other powers not specifically given. *Expressio unius est exclusio alterius.*

The only other power given the supreme court by the legislature is found in sections 4944 and 4945. These sections provide the only partial new trial which may be given by the supreme court. In these two sections are to be found all the power the court has on the subject of partial new trials.

We know that it is stated in 29 Cyc. 732, and 14 Ency. Pl. & Pr., 936, that the authority to pass this rule is up-

held in many states, but when the court examines the
authorities, it will find that it is by virtue of express
law on that subject in those states that uphold it, and
under a Constitution that permits it.   But no state that
we have found has ever undertaken to enforce the rule
as broadly as it is adopted by this court.   *State* v. *Gid-*
*eon,* 41 Am. St. 639; *Vannatte* v. *Anderson,* 3 Vincent
413; *Harris* v. *Commonwealth,* 35 Pa. St. 468.

The above case expressly holds that this court is
without the power to adopt the rule in question except it
be authorized by an act of the legislature, and further
holds that a judgment at law is an entirety and cannot
be affirmed in part and reversed in part.   We, there-
fore, have declarations by this court that under the
Constitution of the state we are entitled to a jury trial
on all issues on trial at common law, and this was one
so triable.   And further a declaration by the court that
a circuit court judgment is an entirety and that it is
beyond the power of the court to separate and affirm in
part and reverse in part.   All this well-settled law
must be overruled before the court can enforce this
rule.   If valid, should the rule be enforced in this case?

When the court rendered the opinion reversing the
former case it said that "the verdict, which was for the
sum of one hundred dollars, is so grossly inadequate
as to indicate that in arriving at its verdict, the jury
was influenced by passion, prejudice, or corruption."

The court then reversed the case "in so far as it ad-
judges the amount of damages to be recovered, but in
all other respects will remain and be in full force and
effect, and the cause remanded only for the purpose
of determining the amount of damages to be recovered
by appellant." See 60 So. 215. The very reason as-
signed by the court for reversing only on the question of
damage is the very reason why this case should
not have been disposed of that way for there has never
been a fair and honest adjudication of liability against
us.

. The opinion is in direct conflict with every authority which can be found which sustains the right of any court to enforce a rule of this character, under any circumstances, even where the authority to pass the rule is undoubted. We say this with the greatest deference to the court. *Simmons* v. *Fish,* 210 Mass. 563, 97 N. E. 102; *Doody* v. *Boston, M. R. R. Co.,* 89 Atl. 487; *Lisbon* v. *Lyman,* 49 N. H. 553; *Piper* v. *Railroad,* 75 N. H. 228, 72 Atl. 1024; *McBride* v. *Huckins,* 76 N. H. 206, 81 Atl. 528; *McBride* v. *Huckins,* 76 N. H. 206, 213, 81 Atl. 528.

It is our contention that there never has been any adjudication of liability against us; that the learned court was in error in assuming that this verdict was reached by passion, or prejudice, or corruption in our favor; that all other courts that have passed upon this question have said in cases exactly like this, even where they had this rule, that there had been no adjudication of liability because it was manifest from the very verdict itself that it was a compromise verdict, and that in such case there should be no partial reversal.

The rule violated the fourteenth amendment to the Constitution of the United States, in that it deprives us of our property without due process. · 149 U. S. 70.

The court should not have excluded the evidence of liability even if we are in error as to all else. *Benton* v. *Collins,* 47 L. R. A. 33. Is this rule a rule calculated to promote the ends of justice if it is a valid rule; *Simmons* v. *Fish,* 97 N. E. 102. All rules of the court should promote justice and not obstruct it.

It is certain in this case that there has been no honest adjudication of liability against us; it is certainly plain that every court that has dealt with this subject and is seeking to apply this rule has said that the rule must be reasonable; that it must not embarrass the parties in their substantial rights. In other cases, in suits of this nature, where so small a verdict as this has been rendered, the courts have held that it was a

compromise verdict, and was not a case in which the court ought to say that liability had been adjudicated. No court has ever undertaken to enforce this rule as broadly as it is promulgated by this court. We feel that the case should be reversed because this rule is a nullity, and for the many other reasons argued in this brief.

*Hudson & McKay,* for appellee.

Appellant most strangely asserts that, on the trial of the sole issue of the amount of damages, all the facts of the case should have gone to the jury. What facts? Facts to determine what issue? Surely, not facts touching only the issue of liability or negligence! That issue had been fairly found by a prior verdict and judgment and finally affirmed by this court without question or objection. Such facts, that is, facts pertinent only to the finally adjudicated issue of liability or negligence, could not possibly have been admissible, competent, relevant or material under any known rule of evidence, pleading, practice or reason.

Again, most strangely does appellant assert that Rule 13 is incompatible with our comparative negligence statute. This contention is hopelessly and palpably untenable and inaccurate. This admits of perfect demonstration. Chapter 135 of the Acts of 1910, our comparative negligence statute, in part provides: "Contributory negligence shall not bar a recovery, but damages shall be diminished, etc." Under this statute, as expressly interpreted by this court, contributory negligence no longer goes to the issue of liability or negligence of the defendant, but goes exclusively to the issue of damages. The statute is plain and peremptory in this particular, "contributory negligence shall not bar a recovery, but damages shall be diminished, etc." *Yazoo & M. V. R. Co.* v. *Carroll,* 60 So. 1013; *Benton* v. *Collins,* 47 L. R. A. 33.

There was no compromise verdict in this case. Any assertion to the contrary is wholly gratuitous and unwarranted by any fact of record, but, whether it can or not, the truth is that the plaintiff unfortunately was a "nigger" from St. Louis and, in his ignorance and innocence, he did not know how to play the "humble game" as is required even in our courts by our white juries. He was not disrespectful, but the jury just did not like his unfortunate and unintentional manner. The evidence constrained a verdict of liability, but the jury would not give him his compensatory damages. There was no compromise between liability and damages. Just as this court wisely divined the issue of liability for simple negligence was fairly found for the plaintiff, but the jury failed to respond in damages adequately; and for this reason alone this court awarded a new trial on that single issue in which alone there was error. That there was no compromise in finding the issue of liability or negligence; that there was no element of contributory negligence in the case; that our comparative negligence statute had no application; that the only error in the first trial was as to the issue of damages; that the issue of liability was found fairly and without error; and that the case should be tried on the issue of damages only, all these propositions and more, have been finally and conclusively adjudicated by the former judgment of this court which to this good day stands unquestioned by suggestion of error, motion to correct or other exception or objection.

Smith, C. J. delivered the opinion of the court.

This suit was instituted in the court below by appellee to recover from appellant damages for an injury received by him while in appellant's employ by reason of the negligence of its servants. On the trial of the cause there was a verdict and judgment for appellee for the sum of one hundred dollars, from which he appealed

to this court, and obtained a reversal thereof for the reason that the damages allowed him were inadequate. 103 Miss. 522, 60 So. 215. In reversing the judgment, however, the new trial directed was restricted to the ascertainment of damages only, and, in so far as it settled the question of liability, the judgment was permitted to remain in full force and effect. On return of the cause to the court below it was again tried in accordance with the directions of this court, and resulted in the award to appellee of damages in the sum of six thousand and seven hundred and fifty dollars. Appellant's principal assignment of error is that this court was without power in reversing and remanding this cause to direct that it be tried on the question of damages only, and that therefore the court erred in restricting the trial to that issue.

Two questions arise on this assignment of error: First, has this court, independent of rule No. 13 (59 So. ix), adopted by it some time since, the right to limit the issues when awarding a new trial? and, second, if not, had it the power to assume such a right by the adoption of this rule?

All of the powers with which this court is vested and which are not conferred upon it by the Constitution, either expressly or by necessary implication, are derived: (1) From statutes; and (2) from the common law. Taking up first the second of these sources from which our power is derived, and since it has been held that it "is undoubtedly the rule at common law" that in awarding a new trial because of inadequate or excessive damages the court is without power to limit the issue to the assessment of damages only (*Farrar* v. *Wheeler*, 145 Fed. 482, 75 C. C. A. 386), it will not be unprofitable to first answer the question: What is the common law?

In 1 Kent's Commentaries, 471, it is said: "The common law includes those principles, usages, and rules

of action applicable to the government and security of persons and property, which do not rest for their authority. upon any express and positive declaration of the will of the legislature.''

In *Kansas* v. *Colorado,* 206 U. S. 46, 27 Sup. Ct. 655, 51 L. Ed. 956, the supreme court of the United States, after quoting this passage from Kent, proceeded as follows (italics ours) :

''As it does not rest on any statute or other written declaration of the sovereign, there must, *as to each principle thereof, be a first statement. Those statements are found in the decisions of courts,* and the first statement presents the principle as certainly as the last. Multiplication of declarations merely adds certainty. For, after all, *the common law is but the accumulated expressions of the various judicial tribunals* in their efforts to ascertain what is right and just between individuals in respect to private disputes.''

In *Forbes* v. *Scannell,* 13 Cal. 266, it was said, quoting from an opinion delivered by Cushing, when attorney-general, construing a statute, that:

''By 'common law' is intended that law which is to be found in the decisions of the courts of justice of the United States, both federal and state courts, as distinguished from that law which is found in the statute law of the United States and of the several states.''

In *Murray* v. *C. & N. W. Ry. Co.,* 92 Fed. 868, 35 C. C. A. 62, it was said that (italics ours) :

''It has always been assumed that the federal courts were endowed with a power and jurisdiction adequate to the decision of every cause, and every question in a cause, presented for their consideration, and of applying to their solution and decision any rule of the common law . . . applicable to the case, and that would aid them in reaching a just result, which is the end for which courts were created. If a case is presented not covered by any law, written or unwritten, their powers are ade-

quate, and it is their duty to adopt such rule of decision as right and justice in the particular case seem to demand. *It is true that in such a case the decision makes the law, and not the law the decision, but this is the way the common law itself was made, and the process is still going on.*"

Numerous other utterances of this character may be cited from the decisions of the courts. Indeed, "the fundamental idea of law is that of a rule or principle underlying a series of judicial decisions." "Courts and Legislation," by Prof. Roscoe Pound; Proceedings of the Bar Association of Tennessee 1912, p. 81.

Discarding, then, the archaic theory characterized by Austin as "the childish fiction employed by our judges that judiciary or common law is not made by them, but is a miraculous something, made by nobody, existing . . . from eternity, and merely declared from time to time by the judges," and expressing the idea embodied in these authorities in slightly different language, the common law consists of those principles and rules of action which have been from time to time adopted and acted upon by the courts when administering justice in cases not governed by any written law, arising out of the private disputes of individuals. The common law thus brought into existence, while, in most respects, the "soul of reason," is not always arrived at by an application of the rules of logic, for its basis in the last analysis is nothing more nor less than expediency (Holmes' "The Common Law," pp. 35 and 68); and it is, after all, but "the product of experience of time, and the necessities of men living under a form of government." *Noonan* v. *State,* 1 Smedes & M. 573; Holmes' "The Common Law," index headings "Law" and "Experience." It is not unchangeable, and no one will contend that it is complete and perfect, though it has been and always will be "in constant process of improvement by means of the decisions of the courts in

all common-law jurisdictions'' (24 Harvard Law Review, 29), and ''at any given time pretty nearly corresponds, so far as it goes, with what is then understood to be convenient.'' Holmes' ''The Common Law,'' p. 1.

In *Noonan* v. *State,* 1 Smedes & M. 573, it was said that:

''That the. common law, like the common atmosphere around every living being, is gladly received by all framers of government, is certainly very true, but that it was adopted to remain perpetual, unaltered, and un-alterable, and not to be tempered to our habits, wants, and customs, we conceive was never designed by the wisdom of those who established our fundemental law.''

The growth of the common law by means of judicial decisions is nowhere better exemplified than by the cases of *Western Union Telegraph Co.* v. *Allen,* 66 Miss. 549, 6 So. 461, and *Lumber Co.* v. *Harrison County,* 89 Miss. 448, 42 So. 290, 873. In the first of these cases this court adopted and acted upon a rule unknown to the early common law, and which had been altogether repudiated by the modern decisions of the English courts. In the course of its opinion the court said, with reference to the growth of the law of common carriers, that:

''The courts then (that is, in the early history of the English law), as the courts now, conscious of the needs of the public, expanded the principles of the law, fitted them to the exigencies of the occasion, and imposed a degree of liability unknown to other contract relations, but required for the safety and protection of the public.''

In the second of these cases the court had under consideration the liability of a tenant for years for waste. Under the common law as it was when adopted in this country, a tenant for years was not liable therefor, but this rule of law had been changed in England, and such a tenant made so liable, by the statutes of Marlbridge and Gloucester long prior to the adoption by us

·of the common law.  These statutes, however, were excluded from operation in this country by the pro-visions of the ordinance organizing the territory of Miss-issippi, and of the Constitution of 1817 (Schedule, par. 5).  *Boarman* v. *Catlett*, 13 Smedes & M. 152.  Never-theless, the court, after pointing out that the early com-mon-law rule in this regard had been changed by several of its former decisions, and made to conform to the principle contained in these statutes, held the tenant liable.  In the course of its opinion the court, among other things, said:

"Over six hundred years ago the rule exempting the tenate from waste was considered harsh and unjust towards the lessor, and the very purpose of these stat-utes was to relieve the law from this species of wrong. To say that this principle has not been adopted as a part of our jurisprudence would be to say that our courts and laws have not kept pace with the development of the law in extracting from it just rules of right."

Returning now to the particular point here under con-sideration, an examination of the English decisions will disclose that those courts have generally, though not always, declined to limit the issues when awarding a new trial.  The ground upon which these decisions seem to proceed is that the verdict of a jury is indivisible, and the judgment rendered thereon is an entirety, must in all cases be dealt with as such, and therefore must be affirmed or reversed *in toto*.  Why this result should follow when the issues determined by the jury are, in fact, separable, and when no harm will result from re-taining the verdict and judgment upon those issues not ·affected by error, does not appear; and we dare say no good reason can be assigned therefor.  *Eddie & Larraby* ·v. *East India Co.*, 1 Blackstone, 295, was an action on two bills of exchange in which there was a verdict for the plaintiff on one of them and for the defendant on the other.  In setting aside this verdict because of the

error in the finding for defendant, Lord Mansfield said (italics ours):

"There is a verdict in part for the plaintiff; . . . but *for form's sake* we must set the whole verdict aside."

Since the only reason that could be assigned by the greatest of English judges for this practice was that it is required for form's sake, it is fair to assume that no better reason exists. All of the English cases holding that a partial new trial may not be granted that have come under our observation were decided after the year A. D. 1700, and may therefore not be a part of the common law adopted by us, as to which we do not deem it necessary to express an opinion, for the reason that, as we have heretofore pointed out, the common law as it now exists is not necessarily the same as it was when originally adopted. Even the English courts recognize the fact that the common law is not unchangeable, and that the common law of the time of Edward I is not necessarily the same as that of the time of Edward the Confessor, and that the common law of James I is not necessarily the same as that of the time of Edward I. In several of the English cases, however, the indivisibility of the verdict seems not to have been considered as a bar to a partial new trial, as will appear from an examination of *Hutchinson* v. *Piper,* 4 Taunt. 555; *King* v. *Mawbey,* 6 T. R. 619; *Thwaites* v. *Sainsbury,* 7 Bing. 437; *Price* v. *Harris,* 10 Bing. 331; *Stroud* v. *Stroud,* 7 M. & G. 417; *Moore* v. *Tuckwell,* 1 M. G. & S. 607; *Clement* v. *Lewis,* 3 Brod. & B. 297. Most of the English decisions examined by us in this connection will be found referred to in the case of *Clark* v. *Railroad Co.,* 33 R. I. 83, 80 Atl. 406, Ann. Cas. 1913B, 356.

All doubt as to the power of the English courts to award a partial new trial, however, has now been cleared up by a rule of court adopted under the present judicature act, which provides that:

"A new trial may be ordered on any question with-
·out interfering with the finding or decision upon any
·other question." The Annual Practice (1915) p. 713.

Turning now to the American decisions, it appears
from the cases collated in the notes to 2 R. C. L. 287,
4 Ency. L. & P. 662, *Smith* v. *Whittlesey,* 7 Ann. Cas.
114, and *Simmons* v. *Fish,* 210 Mass. 563, 97 N. E. 102,
Ann. Cas. 1912D, 588, that the right to limit the issues
when ordering a new trial is exercised by a large num-
ber, if not a majority, of the American courts without
any statutory authority so to do.

In the note to *Smith* v. *Whittlesey* it is said that:

"It seems probable that the practice is a departure
from the ancient common law, due to a desire to elimi-
nate unnecessary litigation and expense and made prac-
ticable by the discretion with which the appellate court
is invested in respect of the granting of new trial. .
. . However the practice may have arisen, it is un-
doubtedly the rule, as stated in the reported case, that
in remanding a cause for a new trial, the reviewing court
will, when error exists only in respect of one or more
of several issues, and the judgment in other respects
is free from error, order the trial court to find upon the
issues in respect of which the error was made, leaving
the other findings to remain as part of the record.
. . . As to whether, when the judgment is erroneous
·only in respect to damages, the court has the right to
limit the issues in remanding the case for a new trial to
that question, it has been held that it is 'undoubtedly'
the rule at common law that the entire verdict must be
set aside, and a venire *de novo* ordered covering all
·of the questions submitted to the jury. *Farrar* v.
*Wheeler,* 145 Fed. 486, 75 C. C. A. 386. See also,
*Peed* v. *Brenneman,* 72 Ind. 288. But in a number of
·cases the courts have, apparently in the absence of
statute, limited the inquiry of the jury on the new trial
to an ascertainment of damages."

The two cases cited in this note, where it was held that at common law a new trial for the assessment of damages only, could not be awarded, are *Farrar* v. *Wheeler,* 145 Fed. 482, 75 C. C. A. 386, and *Peed* v. *Brenneman,* 72 Ind. 288. In the first of these cases the court exercised the right to limit the issue by virtue of a statute, no authority was cited for the statement that no such right existed at common law, and it is not clear whether by this statement the court meant the early or the present common law. The second case cites in support of its holding *Clement* v. *Lewis,* 3 Brod. & B. 297. That case was decided in the Exchequer Chamber in 1822, and it appears from the report thereof that, where error appeared in the assessment of damages only, writs. of inquiry were frequently awarded for the correct ascertainment thereof, the verdict and judgment in other respects being permitted to remain; but in that particular case the new trial was not limited to the assessment of damages only, because the verdict, having wholly failed to assess any damages at all, was void. In *Simmons* v. *Fish, supra,* the Massachusetts supreme judicial court, after reviewing its prior decisions, said:

"This review of our cases demonstrates that this court continuously from early times has exercised the power of narrowing a new trial to specific points in cases. where the error committed at the trial was so limited in character as with justice to both parties to be separable from the other issues determined by the first verdict. It has done this as a part of its inherent judicial authority, and not under any statute. It has exercised the power in a great variety of cases touching divers kinds. of issues involved in general verdicts. The guiding principle is that, although a verdict ought not to stand which is tainted with illegality, there ought to be but one fair trial upon any issue, and that parties ought not to be compelled to try anew a question once disposed of by a decision against which no illegality can be shown."

It will be observed that the court here referred its right to limit the issues to its "inherent judicial authority." This, however, is but another way of saying that it thereby exercised one of its common-law powers; the rule that a court possesses certain inherent powers being derived from the common law.

Looking to the whole body of modern decisions dealing with the question here under consideration, most of which are referred to in the authorities hereinbefore cited, we find that it has often been held, in the absence of statutes so providing, that the issues may be limited when a new trial is awarded. Consequently, that such is now the rule of the common law ought to, and will by us in this connection, be considered as settled. *Lux* v. *Haggin,* 69 Cal. 385, 4 Pac. 919, 10 Pac. 674.

The right of an appellate court to limit the issues, if separable, when awarding a new trial in equity, has never been questioned, and all of the reasons which support this practice apply with equal force when awarding a new trial at law in a cause wherein the issues are separable. The fundamental distinction between courts of law and equity—that is, that the one acts *in rem* and the other *in personam*—that is, made to account for most of the differences between the procedure of the two systems cannot serve that purpose here; for in this connection whether the proceeding is *in rem* or *in personam* is wholly immaterial in so far as convenience, practicability, right, and justice are concerned. The only practical difference between the two systems in so far as the question here under consideration is concerned is that the issues in equity can be more frequently and easily separated than at law. The practice in which this and other American courts have long indulged of affirming without the consent of the defendant a judgment erroneous only because the damages awarded are excessive, when the plaintiff will agree to remit such portion thereof as will reduce the amount to what the court

considers reasonable, is an innovation both upon the early common law and as it exists in England to-day (*Watt* v. *Watt*, 2 Ann. Cas. 672), and is probably of more doubtful propriety than is the right here under consideration; for in exercising the former the court substitutes its own judgment as to the amount of damages to be awarded for that of the jury and permits the recovery thereof without it having ever been awarded by any jury, while in the exercise of the latter it simply submits that question to another jury. If the theory of the indivisibility of a verdict in a case wherein the verdict is erroneous only because of excessive damages is a bar to limiting the new trial to that issue only, *a fortiorti* it is also a bar to the setting aside of the verdict as to amount of damages and the entering of a judgment without the consent of the defendant for such an amount as the court considers reasonable. The practice of so doing, however, has not only become thoroughly imbedded in our jurisprudence, but a statute (section 4910 of the Code of 1906) by which the trial court was attempted to be deprived of this right was declared void by this court on the ground that the right to so control and revise the verdict was a part of "the right of trial by jury" which section 31 of our Constitution provides "shall remain inviolate" (*Y. & M. V. R. R. Co.* v. *Wallace*, 90 Miss. 609, 43 So. 469, 122 Am. St. Rep. 321).

The cases wherein this court has limited the issues when awarding a new trial by virtue of the provisions of such statutes as sections 778, 4944, and 4945 of the Code of 1906 are, of course, not in point here, and an examination of our digests does not disclose any other cases in which this right has been exercised. Two cases, however, have come under our observation wherein this right was exercised in the absence of statutory authority therefor, and it may be that there are other such cases buried in our reports.

In *Bedford* v. *Railroad Co.*, 65 Miss. 385, 4 So. 121, the declaration in substance, alleged:

"That defendant by carelessness and negligence in running its trains killed two mares and a colt, on February 27, 1887, and injured a gray mare, on March 3, 1887, all the property of plaintiff."

At the close of the evidence the court instructed the jury to find for the defendant, and there was a verdict and judgment accordingly. An appeal being taken to this court, the judgment was reversed in part and affirmed in part, and a new trial awarded upon one issue only; the language of the court in so doing being as follows:

"It was wrong to instruct the jury . . . as to the gray mare. . . . In all else the judgment is affirmed; but, as to the action for killing the gray mare, the judgment is reversed, and a new trial awarded."

In *Taylor* v. *Barbour*, 90 Miss. 888, 44 So. 988, 122 Am. St. Rep. 328, the plaintiff instituted two different suits before a justice of the peace to recover of the defendant upon two claims, one for sixty dollars and the other for one hundred and twenty-five dollars. On appeal to the circuit court both these suits were consoliated and tried as one. At the close of the evidence there was a peremptory instruction to find for the plaintiff for the amount sued for, and the verdict returned, as it appears in the original record in the case, was in the following language: "We, the jury, find for the plaintiff in the sum of one hundred and eighty-five dollars"— this being the total of both demands. This verdict was correct in so far as the claim for one hundred and twenty-five dollars was concerned, but was erroneous in so far as it awarded a recovery on the sixty dollar claim. It was therefore affirmed in so far as it awarded a recovery on the first claim, and reversed in so far as it awarded a recovery on the second, or sixty dollar claim, and was remanded for trial on that issue only.

If the theory that a verdict of a jury is in all cases indivisible is correct, then in these cases there should

have been a general, and not a partial, new trial, and they were, to that extent, wrongly decided. The truth is that the theory is fallacious; such verdicts being divisible or not according to the circumstances of the particular ·case. In the cases just cited the issues, though not separated in the verdict, were in fact separable, and the court simply exercised its power derived both from the common law and from the statutes hereinafter referred to of limiting the new trial to those issues with reference to which error was committed on the former trial.

Turning now to the first-mentioned source from which this court derives its powers—that is, the statutes or written law—the right to limit the issues when awarding a new trial is conferred upon it, certainly by one, and probably by two, of our statutes. Section 800 of the Code of 1906 is as follows: "Every new trial granted shall be on such terms as the court shall direct," etc. The only difference between the present form of this statute and its form as it appeared in the earlier Codes (Hutchinson's Mississippi Code, section 73 of chapter 61, page 876) is that it formerly read: "Every new trial granted at law shall be on such terms and conditions as the court shall direct," etc.—the words "and conditions" being now omitted. The words "terms" and "conditions" however, as here used, are synonymous. The word "term" means "that which limits the extent of anything," and, when used in the plural, means "propositions, limitations, or provisions stated or offered, as in contracts, for the acceptance of another and determining the nature and scope of the agreement." A "condition" is "that which limits or modifies the existence or character of something—a restriction or qualification." Webster's New International Dictionary. If the statute read, "Every new trial granted at law shall be within such limitations as the court shall direct," no one would question the right of· the court under it to limit the is-

sues.   The only difference between a statute so worded
and the one here in question is that the latter includes
the former, and more.   It is simply broader and more
comprehensive.   It is true that this section of the Code
appears in the chapter on circuit courts, but the power
therein conferred upon the trial court may be exercised
by this court on appeal, under sections 4909 and 4919 of
the Code.

Moreover, section 4919 seems also to contemplate that
this court, in remanding a case to a lower court for a
new trial, may direct that the issues be limited.   This
section is as follows (italics ours):

"The supreme court shall hear and determine all
cases properly brought before it at the return term, un-
less cause be shown for a continuance; and in case the
judgment, sentence, or decree of the court below be re-
versed, the supreme court shall render such judgment,
sentence, or decree as the court below should have
rendered, *unless it be necessary, in consequence of its
decision, that some matter of fact be ascertained, or
damages be assessed by a jury,* or where the matter
to be determined is uncertain; in either of which cases
the suit, action or prosecution shall be remanded for a
final decision; *and when so remanded, shall be pro-
ceeded with in the court below according to the direc-
tion of the supreme court,* or according to law in the
absence of such directions."

In *Powell* v. *Railroad,* 77 Ga. 192, 3 S. E. 757, the su-
preme court of Georgia, in awarding a new trial, lim-
ited the issues to the assessment of damages only, and
stated that by so doing it exercised the power of direc-
tion conferred upon it by section 218, par. 2, and sec-
tion 4284, of the Georgia Code.   These sections are as
follows:

"218. (205) (211) Powers enumerated.   The supreme
court has authority—   . . .

"2. To hear and determine all causes, civil and crim-

inal, that may come before it, and to grant judgments of affirmance or reversal, or any other order, direction or decree required therein, and if necessary to make a final disposition of the cause, but in the manner prescribed elsewhere in this Code.''

''4284. (219) (4180) Decision shall be entered on minutes. The decision in each case shall be entered on the minutes, and it shall be within the power of the supreme court to award such order and direction to the cause in the court below as may be consistent with the law and justice of the case.''

The statute under which the United States supreme court and the federal courts of appeal exercise the right to limit the issues when ordering a new trial, reads as follows:

''The supreme court may affirm, modify, or reverse any judgment, decree or order of a circuit court, or district court acting as a circuit court, or of a district court in prize causes, lawfully brought before it for review, or may direct such judgment, decree or order to be rendered, or such further proceedings to be had by the inferior court, as the justice of the case may require.'' *Farrar* v. *Wheeler*, 145 Fed. 486, 75 C. C. A. 390.

The case relied upon by counsel for appellant as supporting their contention that this court is without the power to limit the issues when ordering a new trial is. *Adams* v. *Carter*, 92 Miss. 579. In that case the plaintiff, having recovered only a portion of his demand, coerced the payment of the amount recovered by means of an execution, and then appealed, whereupon a plea was filed in this court by appellees setting up the payment by them of the amount recovered in the court below as a bar to the appeal. This plea was sustained, and the appeal was dismissed. In its opinion the court, after referring to the fact that we have no statute ''authorizing an appeal from a part of a judgment at law in a civil case,'' stated that a judgment at law

is "an entire thing" which must be "appealed from
as an entirety," and that all it "could possibly do in this
case under our procedure would be, in case of error,
to reverse the judgment and remand the cause for a
new trial in the court below," and concluded by saying
that:

"In view therefore, of the case made by the record,
and in view of the wide distinction between the equity
and common-law procedure as to this court's power in
reversing an equity decree and a judgment at law, and
in view of the absence of any statute such as exists in
Kentucky and other states, we are constrained to hold
that the plea in bar is well taken. It might be well for
the legislature to provide by statute that this court
should have the power to affirm in part and reverse in
part, as justice might require, where the appeal is from
a judgment at law; but, in the absence of such a statute,
we are held down to the well-settled rule indicated in
appeals from judgments of courts at law."

The Kentucky statute referred to provides that, when
a party recovers judgment for a part of his demand, the
enforcement of such judgment shall not bar an appeal
as to the part not recovered.

It will be observed that the question there presented
to the court for decision was not whether or not it had
the right to limit the issues when ordering a new trial,
but whether or not the appellant was barred of his
appeal because of his having accepted the fruits of his
judgment; so that the case, therefore, is not determi-
native of the issue here, though it may be conceded that
the court would have decided it otherwise had it been
of the opinion that it possessed the power here in ques-
tion. The nonexistence of this power was assumed by
the court apparently without investigation; certainly
without citation of authority.

The supposed "indivisibility of a verdict" and "en-
tirety of a judgment," however, have not been permit-

ted to cause an appellant to be barred of his appeal in all of the cases wherein he has recovered and accepted a part of his demand only. The character of the cases in which this result has not been permitted will be found set forth in the brief of counsel for the appellee in *Adams* v. *Carter,* 92 Miss. at page 584, 47 So. 409, 16 Ann. Cas. 76, and designated by him as the first, third, fourth, and fifth exceptions to the general rule. A partial new trial is not a matter of right, and will be awarded only when the issues are clearly separable, and when no injustice will result therefrom. This fact, it is more than probable, accounts in part for the rule applied in *Adams* v. *Carter.* If the "indivisibility of the verdict" and the "entirety of the judgment" are valid reasons for not awarding a partial new trial, it must be either because such trials are impossible, or at least impractical, or because injustice will generally result therefrom. The first of these reasons is, of course, absurd; and that the second is without foundation in fact has been demonstrated by the experience of most of the American courts. The truth is that the rule, if such, in fact, there be, that a judgment at law must at all times be dealt with as an entirety, is purely an arbitrary one, and, when carried to an extreme, as will be demonstrated by an examination of the cases. wherein it has been so dealt with, results in many absurdities. Be that as it may, the question decided in *Adams* v. *Carter, supra,* hereinbefore stated, was not the one here under consideration.

In *McNairy* v. *Gathings,* 57 Miss. 215, the verdict, of the jury was erroneous, in so far as it attempted to assess the amount of damages to be awarded the plaintiff, for the reason it was arrived at by the taking into consideration of an improper element. Upon this judgment a verdict was entered, and afterwards— "a motion was made by the plaintiff to vacate this judgment and award him a writ of inquiry to assess

the value of the cotton. This motion was based upon the theory that, inasmuch as the value of the money paid for the cotton was not in issue by the pleadings, and was a matter with which the jury had no concern, so much of the findings as related to it was to be treated as surplusage, and the verdict regarded as a general finding for the plaintiff, with a failure to assess the damages to which he was entitled. This motion was overruled, but a subsequent motion by the plaintiff to set aside the verdict as being contrary to the law and evidence was sustained and a new trial awarded. The new trial was had, and resulted in a verdict for the defendant.''

The ground upon which a reversal of this judgment was sought was that the court erred ''in refusing to award a writ of inquiry upon the former verdict.'' It was held that the court below was correct both in refusing to award the writ of inquiry and in setting aside the verdict and awarding a new trial. It will be observed that the court was not there requested to affirm in part and reverse in part, but to disregard that portion of the judgment entirely by which it was sought to assess the damages, and to proceed as if the jury had not responded at all to that issue. This the court declined to do, and then, upon request of counsel for the plaintiff, set aside the verdict *in toto,* and awarded a new trial generally. It may be that both counsel for the plaintiff and the court were of the opinion that, unless the attempted assessment of damages could not be treated as a nullity, the judgment must be affirmed or reversed as an entirety; but nevertheless that was not the point the court was called upon to decide, and consequently, it was not before it for consideration. The case therefore is not strictly in point here, and was not cited by counsel for appellant probably for that reason.

In arriving at our conclusion in this matter we have not left out of view the suggestion of counsel for appel-

lant that under the rule of *"expressio unius est exclusio alterius"* the grant of power to this court to reverse partially, contained in sections 4944 and 4945 of the Code, impliedly prohibits it from so doing in cases not coming within the provisions of these sections. In so far as the right of this court to limit the issues when ordering a new trial is derived from the common law this rule has no application. A great many of our statutes dealing not only with the substantive, but also with the adjective, law consist merely of codifications, sometimes general, but in most cases only partial, of some particular rule or principle of the common law; and, should the courts hold that, when any rule or principle of the common law is by the legislature partially incorporated into a statute, the remainder of the rule is thereby repealed or annulled, endless trouble and confusion would result, necessitating in all cases a complete codification of the subject dealt with by the statute. In so far as this argument applies to the construction we have placed upon sections 800 and 4919 of the Code, it will be sufficient to say that the rule here invoked has served its purpose when by invoking it we determine that no such right is conferred upon this court by sections 4944 and 4945 of the Code, and that such right, if statutory, must be found in some other statute.

One of the objections of counsel for appellant to the exercise by this court of the right here in question is that it is prohibited from so doing by section 31 of our Constitution, which provides that "the right of trial by jury shall remain inviolate."

There is no merit in this contention, for the reason that appellant's liability was determined by the jury on the first trial, and by limiting the issue on the second trial solely to the ascertainment of damages, the court thereby simply preserved the fruits of the former trial in so far as it was not affected by error. If it be true,

as was held in *Y. & M. V. R. R. Co.* v. *Wallace,* 90 Miss. 609, 43 So. 469, 122 Am. St. Rep. 321, that the trial court, when, with the consent of the plaintiff, it reduces the amount of damages awarded to what it considers reasonable, and renders judgment therefor without the consent of the defendant, not only does not thereby violate section 31 of the Constitution, but, on the contrary, its right to so control and revise the verdict is a part of "the right of trial by jury" expressly guaranteed by that section, it follows *a fortiori* that the exercise by the court of the right here in question does not violate that section. It also necessarily follows from that decision that there is no merit in the contention that by the exercise of this right we deprived appellant of its property without due process of law.

Having arrived at the conclusion that this court has the right, both at common law and by statute, to limit the issues when awarding a new trial, it becomes unnecessary for us to determine whether or not, in the absence thereof, rule No. 13, recently adopted by us, and so vigorously assailed by counsel, would be valid.

But it is said by counsel for appellant, in effect, conceding that this court is vested with the right here in question, it should not have been exercised in the case at bar, for the reason that it appears from the opinion rendered on the former appeal that the reason the verdict was set aside, in so far as it fixed the amount of damages, was that the amount awarded was "so grossly inadequate as to indicate that in arriving at its verdict the jury were influenced by prejudice, passion, or corruption," from which they say that it appears that the entire verdict, and not simply that portion of it awarding damages, was tainted by passion, prejudice, or corruption, and therefore should not have been permitted to stand in any respect.

The right to limit the issues when ordering a new trial should be exercised only when it is clear that no

injustice will result from so doing. Particularly is this true when the only error in the verdict is in the amount of damages assessed, and it appears that this error was not the result of any ruling by, or charge from, the trial judge, but was committed solely by the jury itself after retiring to consider of its verdict; for in that case it is more difficult to say that the entire verdict was not affected by the same cause from which resulted the error in the amount of damages. It is manifest, however, from the opinion on the former appeal, that what the court meant was not that it appeared from the record that the entire verdict was tainted by passion, prejudice, or corruption, but simply that the indications were that the inadequate amount of damages awarded was the result thereof. There is no merit, therefore, in this assignment of error, and in reaching the conclusion we have left altogether out of view the "law of the case" rule.

The next assignment of error argued in the brief of counsel for appellant is that "the court erred in excluding from the jury the evidence as to liability." There is no merit in this assignment, for the reason that, under the judgment rendered by us on the former appeal, the court below was without power to permit the question of appellant's liability to be again litigated, so that evidence relating only to that issue was, of course, inadmissible. It is not contended that any negligence on the part of appellee contributed to his injury; consequently no question growing out of our concurrent negligence statute (chapter 135, Laws of 1910) arises in this connection.

*Affirmed.*