William E. J. Connor, J.
This is an application by a prisoner in the Clinton prison at Dannemora, New York, who has been thus confined for a period of 21 years, in the form of a writ of error coram, nobis. The basis of his application is that the sentence that was imposed by the then County Judge of the County of Columbia was so grossly excessive that it constitutes an illegal and unconstitutional sentence. In a previous decision (16 Misc 2d 578) this court decided to grant a hearing on his application.
Because there is no record of the trial, and because the court stenographer who took the testimony is now dead, the facts have to be gleaned from the written statement of the attorney who represented the defendant at the time of the trial and the affidavits and statements of witnesses which were in the files of the District Attorney’s office of Columbia County, all of which I have directed the clerk to make a part of the record in this proceeding. From these papers and statements it would appear that on Independence Day, the 4th of July, 1938, the defendant and a man by the name of John Watson occupied the same quarters on Columbia Street in the City of Hudson. The defendant had spent the greater part of the day celebrating the 4th and at the time of the commission of the crime there is little
*15 doubt that he was either in a state of intoxication, or at least under the influence of alcohol. There is at least the inference that this was also true of Watson. During the evening of that day in the quarters occupied by them, an argument ensued, a stove was thrown, and the defendant’s lip was cut, probably by being hit by a lid from the stove thrown by Watson. The defendant went to a closet, obtained a shotgun that was not his, fired it at Watson causing a wound, from which the said Watson later died. Thereafter the Grand Jury of the County of Columbia indicted the defendant for the crime of murder in the second degree. The court assigned Mr. Abram Miner as attorney to represent the defendant, and after a trial by jury the defendant was convicted of the crime of murder in the second degree. According to Mr. Miner in his statement, “ the trial court, contrary to the usual practice then prevailing, did not confer with me or to my knowledge with the then District Attorney, Edward H. Best, before imposing sentence upon this defendant, nor to my knowledge was any pre-sentence investigation or examination directed to the end that the court might have sufficient information to aid the court in determining the proper sentence to be imposed.” The testimony of the chief probation officers of Columbia County, taken at the hearing, corroborates this fact. Thereafter, after the proper lapse of time, the court sentenced the defendant to an indeterminate sentence at Clinton prison at Dannemora, New York, the minimum of which was not less than 55 years and the maximum was not more than natural life. The defendant had no previous criminal record and at the time of the conviction was 29 years of age. The defendant is now 50 years of age, and still has 34 more years to serve. It goes without saying that the sentence imposed was to say the least, most severe, especially under the circumstances.
Nevertheless, the writ of error coram nobis may not be employed to take the place of a plea in mitigation of sentence. (People v. Lesser, 280 App. Div. 441, affd. 304 N. Y. 903.)
The attitudes of judges on punishment is as varied as are forms of religious belief. What may appear to one judge to be excessive, might well to another appear lenient. There are still judges who honestly believe that deterrent effect of punishment for crime is measured by the severity of the punishment. And this, notwithstanding the recorded facts of history that when pickpocketing in England was punishable by public hanging, the sight of the public execution was frequently the scene of pickpocketing operations. No judge has the right to substitute his judgment as better than that of another. The District Attor *16 ney contends that the writ of error coram nobis under the circumstances is not available and the proper remedy of the defendant, if any, is to apply for executive clemency.
The writ of error coram nobis has come down to us from the days of long ago, even from those days when people still believed in witchcraft. It was devised not by legislation, but by the judiciary, as a suitable method to meet some of the extreme exigencies of justice under a judicial system in many respects different from ours; but being found in a measure available for use amongst us, has been in some States, including ours, recognized as an existing common-law remedy, and this too by judicial decision and not by legislative enactment. The common law, however, both in its substantive and in its adjective features, is not now, never has been, and never will be, static or stagnant. It has been one of the proudest boasts of the common law that it has within itself the potency of steady improvement, and this by judicial action, so long as that action is in accord with existing fundamental legal principles. It is the duty of courts, as attested by numerous decisions throughout the nation, not only to keep the common law and its processes of enforcement abreast, or nearly so, with the substantial innovations of time, with the higher moral and material attainments in the general progress of enlightened civilization, proceeding always, however, upon established fundamental legal principles (12 C. J., Common Law, § 5, pp. 178-180; Yazoo & Miss. Val. R. R. Co. v. Scott, 108 Miss. 871; Gross v. State, 135 Miss. 624, 631).
It has long been the pride of both the Bench and the Bar that our judicial system has inherent power with or without any statute, and within its own judicial framework, to correct its own miscarriages of justice. See the notable speech of Judge Fuld on “ The Writ of Error Coram Nobis ” (N. Y. L. J., June 5, 1947, p. 2212, col. 1; June 6, p. 2230, col. 1; June 7, p. 2248, col. 1). And as Judge Rippey said in the Matter of Lyons v. Goldstein (290 N. Y. 19, 25) “It would be an extraordinary reversal of all precedent to deny to a competent tribunal power over its own judgments in either civil or criminal cases.”1 Or to use the language of Judge Desmond in the Matter of Hogan v. New Yorlc Supreme Court (295 N. Y. 92, 96) “ It is an old, old principle that a duly constituted court, even in the absence of express statutory warrant, has the right ‘ to exercise so efficient a control over every proceeding in an action as to effectually protect every person actually interested in the result, from injustice ’ ’ ’.
The punishment for murder in the second degree is outlined in section 1048 of the Penal Law of the State of New York.
*17 This section provides as follows: “ Murder in the second degree is punishable by imprisonment under an indeterminate sentence, the minimum of which shall be not less than twenty years and the maximum of which shall be for the offender’s natural life Under the provisions of this section it is mandatory that the sentence be not fixed or predetermined, and not leading to a definite end or result. For this reason the District Attorney concedes that a sentence to straight life imprisonment would be illegal. The question thus presented is whether or not a judge, under the guise of discretion, can circumvent the plain intention of the Legislature to prohibit a judge in the imposition of sentence for murder in the second degree, from imposing a sentence which will definitely confine the defendant to imprisonment for life by so far increasing the minimum that the defendant will thus be confined for life, notwithstanding the legislative intent that this should not occur. To make the matter crystal clear, could a judge, in order to make sure that a defendant would never return to society, contrary to the legislative intent, impose an indeterminate sentence of not less than 200 years and not more than life ? I think not.
Here the defendant was 29 years of age. His normal expectancy of life, as stated in the Actuaries’ or Combined Experience Tables of Mortality, was 35.15 years. The sentence of 55 years was just 20 years longer than his expectation of life. Thus the sentence imposed was just as effective in confining the defendant for the remainder of his life, as though the minimum had been 100 or 200 years. Had the defendant had the means whereby he could have appealed the sentence, there is little doubt that the Appellate Division would have reduced it, as indeed it had power to. But no appeal was or can now be taken. A clear injustice has been perpetrated and the courts could not claim to be courts of justice if the only remedy was that suggested by the District Attorney of holding the court powerless and surrendering its mistake to the executive branch of government. A pardon or a reprieve is based upon mercy, not upon justice.
Except for the far-reaching results of this decision, I would allow the defendant to go free today. I do, however, believe that the matter is of such importance to the judicial system that my decision should be passed upon by the Appellate Division, or perhaps the Court of Appeals. I therefore impose a new sentence that the defendant be confined to the Clinton prison at Dannemora, New York, for an indeterminate sentence, the minimum of which shall be 25 years and the maximum of which shall be for his natural life.