FARRAR v. WHEELER.

(Circuit Court of Appeals, First Circuit. March 8, 1906. On rehearing, May 24, 1906.)

No. 574.

1. INFANTS—INJURIES—EARNING CAPACITY.

Where, in an action by an infant, by his father as his next friend, for injuries, there was no proof that plaintiff had been emancipated by his father, nor that the father had in any way waived his right to plaintiff's services, until after the verdict, it was error for the court to permit a recovery for loss of plaintiff's services during minority.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Infants, § 181.]

2. PARENT AND CHILD—EMANCIPATION—EVIDENCE.

That a father brought suit for injuries to his minor son as his next friend, was present in court, prosecuted the case in his son's behalf, and testified concerning two interviews with defendant in which he told defendant that, if his son wanted to work for him during his vacation, he

had no objection, was insufficient to show an emancipation or a waiver of the father's right to his son's services during minority.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Parent and Child, § 174.]

**3. WRIT OF ERROR—REMISSION OF PART OF RECOVERY—CONDITIONAL RELEASE.**

Where, in an action for injuries to a minor, defendant excepted to the court's instruction permitting a recovery for the loss of the minor's services during minority, the error was not affected by the father's offer after verdict to release all claims for damages for loss of time, services, or earning capacity during the minority of his son, provided the judgment was affirmed.

### On Rehearing.

**4. SAME—REVERSAL—NEW TRIAL—SCOPE—LIMITATION—JURISDICTION.**

Rev. St. § 701, provides that the Supreme Court may affirm, modify, or reverse any judgment, decree, or order of a Circuit Court lawfully brought before it for review, or may direct such judgment, decree, or order to be rendered or such further proceedings to be had by the inferior court as the justice of the case may require. *Held,* that where, in an action for injuries to an infant, the only error in the judgment related to the assessment of damages, the Circuit Court of Appeals had jurisdiction on reversal to limit a retrial to the question of damages.

**5. SAME.**

Where, in an action for injuries to a minor, it was held on a writ of error that the only error in the judgment was in an instruction permitting a recovery for loss of services during minority, the Circuit Court of Appeals on reversal and ordering a new trial only as to the question of damages would not limit the trial to an estimate of such services, and direct the jury to find their value and deduct it from the amount of the verdict already rendered.

In Error to the Circuit Court of the United States for the District of New Hampshire.

John S. H. Frink (Orville E. Cain and John E. Benton, on the brief), for plaintiff in error.

William A. Pew, Jr. (Harry G. Sargent, on the brief), for defendant in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

COLT, Circuit Judge. This was an action to recover for personal injuries, brought by a minor through his father as next friend, in which the jury returned a general verdict in favor of the plaintiff, assessing damages in the sum of $5,000. The assignments of error relate to the rulings of the court below on the assessment of damages. In the instructions to the jury upon this point the court said:

"You may, in determining the damages to be awarded the plaintiff in this case, provided you shall find that he is entitled to recover, consider the question of loss of services; that is, the plaintiff is entitled to recover, if you shall find from the evidence that the plaintiff is entitled to recover anything, for loss of his services, past and prospective, and, in determining this question, you may consider how his earning capacity has been affected by the injury complained of."

To this ruling of the court the defendant excepted in substantially the following language:

· ."The defendant excepts to that part of the charge which allows the jurors to assess damages for the loss of earning capacity of the minor during his : minority."

Whereupon the court said:

. "My attention has been called to the question of loss of services, and I wish to say to you, gentlemen, that it makes no difference to whom the money is to be paid. The plaintiff is entitled to recover, if you shall find that he is entitled to recover for loss of services, irrespective of the question as to who gets the money. The law will take care of that."

To this ruling of the court the defendant seasonably excepted. ·

From the foregoing statement it appears that the court below instructed the jury in effect that, if they found the defendant liable, they might assess damages for loss of the plaintiff's earning capacity during his minority, and that the jury rendered a verdict accordingly.

Until emancipation or waiver the father had an independent cause of action against the defendant for loss of his son's services during minority. Unless, therefore, such emancipation or waiver is shown to have taken place upon the record before us, the instructions of the court below were too broad, and the verdict must be set aside.

The record shows that, previous to the commencement of the present suit, the father had not emancipated his son nor in any way waived his right to his son's services. The only evidence having any bearing on this question was, in substance, that the father told the defendant on two occasions that his son might work for him during his vacation. The record also shows that there was no waiver by the father of his claim for loss of services until after verdict. In fact, there is nothing in the record which indicates that any question of waiver was raised during the trial of the case, or was in any manner brought to the attention of the court or counsel. The record also shows that there was no allegation in the declaration for damages arising from loss of earnings during minority, and, further, that no claim was made in behalf of the son for loss of such earnings before or during the trial of the case. So far as appears from the record, the first time any such claim on the part of the son was ever suggested was during the charge, when the court instructed the jury that they might assess damages for loss of the son's services "past and prospective." Nor does the record show that the case was tried on the theory that the son was entitled to recover for loss of earnings during his minority, and that this was done with the father's consent and assistance.

The only circumstances set forth in the record previous to the verdict which have any bearing on the question of the father's waiver are the following: The suit was brought by the father as next friend. He was present in·court prosecuting the case in his son's behalf, and testified about two interviews with the defendant in which he told him that if his son wanted to work for him during his vacation he had no objection.

It is manifest that these circumstances, of themselves, are entirely immaterial on the question of the father's waiver or even consent, since they are perfectly consistent with the assumption that the father never intended to relinquish his claim. These circumstances must be

supplemented by something else in the record to entitle them to any weight in the determination of this question. If, for example, the declaration had contained an allegation of damages for loss of earnings during minority, or if the son before or during the trial had claimed the right to recover for loss of these earnings, or if it appeared in any way that the trial of the case had proceeded on this theory, then the circumstances that the suit was brought by the father as next friend, and that he appeared in court and actively assisted in maintaining the son's claim, might have a material bearing on this question.

It further appears from the record that, after the verdict and after the bill of exceptions was filed, but before it was allowed, the father, by leave of court, filed a formal waiver and release to the defendant of any claim for loss of his son's services during minority, to which the defendant objected and excepted; and that, two months after the bill of exceptions was allowed, the plaintiff filed the following paper, styled a "Remittitur":

"Now comes Frank W. Wheeler, who brings this action as the father and next friend of his son, Harry B. Wheeler, and for the purpose of avoiding a new trial, hereby offers to waive any claim for damages based upon loss of time, services, or earning capacity of his son, Harry B. Wheeler, and offers to release under seal to the defendant, Charles D. Farrar, any and all claims for damages for loss of time, services, or earning capacity, during the minority of said son, which I may have in my own right as father of the said Harry B. Wheeler, and a release for such claims, duly executed, under seal, by the said Frank W. Wheeler, is now in the possession of said plaintiff's counsel of record in this case as an escrow, to be delivered to said defendant, Charles D. Farrar, in case the judgment in this action in favor of the plaintiff is affirmed."

A reading of this paper shows that the question of release, as it is finally left in the record, is simply an offer by the father to release, provided the judgment below is affirmed. But after verdict neither the father's release nor offer of release can deprive the defendant of his substantial legal right under his exceptions. As the case stands upon the record, the father's claim or right of action for loss of the son's services during minority, never having been waived, is still outstanding, and with respect thereto the defendant is entitled to his day in court and the opportunity of defense. The defendant might or might not have insisted upon his legal rights under his exceptions. He might have chosen to waive them, and to accept the verdict with the release tendered, and so end the controversy; but since he has not done this, and has elected to have the controversy settled in two suits rather than in one, it is not within the province of the court to deprive him of this right nor to question his judgment.

In no adjudicated case which has been called to our attention has it been held that a minor was entitled to recover for loss of earnings during his minority upon the state of facts presented in the record before us.

In Judd v. Ballard, 66 Vt. 668, 30 Atl. 96, the father at the trial testified that he had given his son his time between the injury complained of and his coming of age, and it was held by a divided court that a parent might waive his claim for loss of his minor son's time after the commencement of the suit.

Again, in some states, where the complaint seeks to recover the entire damages for loss of the minor's time, and it is brought by the parent as next friend, and the parent prosecutes the case in the minor's behalf and testifies therein, it has been held that these acts amount to a relinquishment of the parent's cause of action. Abeles v. Bransfield, 19 Kan. 16; Chesapeake & Ohio Railway Company v. Davis (Ky.) 58 S. W. 698. These cases, however, as we have already pointed out, are clearly distinguished from the case at bar.

Since the exceptions in the present case are confined to the rulings of the court on the question of damages, the case should go back for a new trial on that question alone.

The judgment of the Circuit Court is reversed, the verdict is set aside, the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers his costs of appeal.

### On Rehearing.

PUTNAM, Circuit Judge. This is an action of tort for personal injuries, in which the judgment below was in favor of the plaintiff on a verdict of a jury. The suit was brought by a minor for an injury to himself, and, in assessing damages, the jury were permitted to allow him for loss of time, services, and earning capacity during his minority, in addition to what might be assessed for his physical sufferings. The only error was in allowing damages for loss of time, services, and earning capacity during his minority. In all other respects the proceedings at the trial were found to be correct. We held that the case should go back for a new trial on the issue of damages alone, and judgment was entered accordingly. The plaintiff in error, who was the defendant below, has now filed a petition for rehearing, in which he claims that, although the error related only to the rule of damages, the entire verdict must, or should in justice, be set aside, and that a venire de novo must, or should in justice, be ordered covering all the questions submitted to the jury. This is undoubtedly the rule at common law. Of course, in criminal proceedings at common law the rule is even more rigid. This, however, is all changed, so far as we are concerned, by various acts of Congress, of which the last was that of June 1, 1872, c. 255, § 2, 17 Stat. 196. This is now found in section 701 of the Revised Statutes, as follows:

"The Supreme Court may affirm, modify, or reverse any judgment, decree or order of a Circuit Court, or District Court acting as a Circuit Court, or of a District Court in prize causes, lawfully brought before it for review, or may direct such judgment, decree or order to be rendered, or such further proceedings to be had by the inferior court, as the justice of the case may require."

The series of statutes resulting in section 701 of the Revised Statutes was formally considered in Ballew v. United States, 160 U. S. 187, 198, 16 Sup. Ct. 263, 40 L. Ed. 388, and sequence, and the flexible powers of the Supreme Court, which powers we hold by the act establishing the Circuit Court of Appeals, was fully explained. At page 202 of 160 U. S., page 268 of 16 Sup. Ct. (40 L. Ed. 388) the conclusion is as follows:

"From this, and from a review of the legislation on the subject of the powers conferred upon this court as a reviewing court, it follows as a necessary conclusion that general authority was given to it on a writ of error to take such action as the ends of justice, not only in civil, but in criminal, cases might require."

There was a general verdict of guilty on two counts of the indictment, the judgment was reversed as to the first count, and the case remanded with instructions to enter judgment according to the verdict on the second count, "and for such proceedings with reference to the first count as may be in conformity to law." The question in the precise form we have here does not seem to have ever been specifically passed on, but definite rulings on kindred topics establish beyond question the propriety of the judgment which we entered, so far as our legal right to enter it is concerned. We have met with a large class of cases where this broad power was exercised with reference to proceedings in equity, and proceedings at common law where juries have been waived; but, in Insurance Company v. Piaggio, 16 Wall. 378, 390, 21 L. Ed. 358, the judgment was reversed, and a venire de novo refused, and directions entered to the Circuit Court to modify the judgment by disallowing a single item of $5,000, which was specifically distinguished by the verdict of the jury. So, in New York, etc., Railroad Company v. Estill, 147 U. S. 591, 596, 622, 13 Sup. Ct. 444, 37 L. Ed. 292, where the jury found the issues for the plaintiff, and allowed a large amount of interest as shown by the record, but assessed the total damages in lump, the Supreme Court directed a new judgment allowing the principal without interest. In Felton v. Spiro, 78 Fed. 576, 583, 24 C. C. A. 321, it appeared that the error occurred after verdict with reference to a motion for a new trial, and the Circuit Court of Appeals for the Sixth Circuit reversed the judgment of the court below, leaving the verdict to stand, but directing further proceedings with regard to what was subsequent thereto. In American National Bank v. Williams, 101 Fed. 943, 947, 42 C. C. A. 101, the Circuit Court of Appeals for the Eighth Circuit reversed the judgment entered on a verdict of the jury, and remitted the case with directions to rectify the allowance of interest, and to enter a judgment for the diminished amount after rectification, and annulling it for the residue. In Great Western Coal Co v. Chicago G. W. Ry. Co., 98 Fed. 274, 279, 39 C. C. A. 79, where the declaration contained two counts, and a verdict had been rendered for the plaintiff on the second count, and, by direction of the trial court, for the defendant on the first count, the judgment was reversed, with an order that the judgment on the second count should stand, but that there should be a new trial on the first. In Pennsylvania Railroad Company v. Jones, 155 U. S. 333, 353, 15 Sup. Ct. 136, 39 L. Ed. 176, the judgment below was reversed, with directions to permit the plaintiffs below to elect to become nonsuit as to one defendant, and to take judgment on the verdict against the other defendants, and with further directions that, if they did not so elect, the entire verdict was to be set aside and a new trial ordered. This last case was considered and approved in Washington Gas Light Company v. Lansden, 172 U. S. 534, 556, 19 Sup. Ct. 296, 43 L. Ed. 543.

A number of cases will be found, both in the Supreme Court and the Circuit Courts of Appeals, where the only error related to the assessment of damages, and where it has been ordered that, on a partial remittitur, the judgment be affirmed. In such cases it has sometimes been required that the remittitur should be made in the Circuit Court and sometimes in the appellate court; and sometimes the judgment has been reversed and remanded to the court below for all proceedings with reference thereto. Among these cases are Hansen v. Boyd, 161 U. S. 397, 411, 412, 16 Sup. Ct. 571, 40 L. Ed. 746; and Hazard Powder Co. v. Volger, 58 Fed. 152, 157, 158, 7 C. C. A. 130, decided by the Circuit Court of Appeals for the Eighth Circuit on September 13, 1893. The latter case is peculiarly like this at bar, because, in the damages assessed there, the husband was allowed to recover for the loss of services and expenses regarding his wife, who was injured, and the court sifted out the details, and pointed out the reduction to which he should submit, and ordered that the judgment might stand if a remittitur of that amount, $426, was entered.

It is true, as the petition before us represents, that there have been numerous cases where the error related peculiarly to damages, and yet, so far as the reports show, the entire verdict was set aside. In none of those cases, however, was the question which we are considering examined, and therefore we are not called on to determine whether the circumstances were peculiar, or whether the propriety of ordering a new trial on only the question of damages was brought to the attention of the court.

The petition also calls our attention to the fact that injustice may be done because of the well-known number of instances in which the jurors, who are opposed to each other on the question of any verdict whatever, compromise on a result far smaller than they would willingly assess if the liability was unquestioned. On the other hand, there can be no doubt that in many cases the damages are increased by the fact that the defendant who is sued insists on litigating the whole matter, and thus, perhaps, brings out at great length aggravating circumstances which otherwise would not appear, impressing the sympathies of the jury beyond what they otherwise would be impressed. Such considerations, however, are too fugitive to be taken into account by an appellate tribunal, which deals only with questions of law. If they have any consideration at all, it is with the trial court, which may weigh all such matters in determining whether to set aside the verdict if it appears improper.

The statute which we have referred to, and the application of it to which we have called attention, demonstrate the flexibility of our powers in reference to the question before us. As the element of damages as to which the error in the trial occurred was only an incidental one, easily distinguished from everything else in the record, and as no complaint was made that the trial on the main issue was otherwise than just and lawful, we are not called on to require the parties in this litigation to travel again, at what may be great expense and labor, a long path on account of a misdirection with reference to

a short one, which misdirection may prove to be, after all, of very little practical consequence.

The petitioner also claims, inasmuch as the error related only to allowing the plaintiff below to recover for his services, etc., during minority, that, if we are to order a new trial only in part, we should limit it to an estimate of those services, and direct that the jury should find their value, and deduct it from the amount of the verdict already rendered. This would be a refining of the proceedings beyond anything heretofore known or suggested; and it would probably be illegal, because it would be impossible to put a new jury in the place of the old one, and to obtain any correct determination of the amount by which the verdict now before us was enhanced by reason of the error which occurred.

The court having fully considered the petition for rehearing, filed on April 21, 1906, and none of the judges who concurred in the judgment desiring that a rehearing should be had, it is ordered that the petition be, and the same is hereby, denied, and the mandate may issue forthwith.