### TWENTY-ONE MINING CO. v. ORIGINAL SIXTEEN TO ONE MINE.

(Circuit Court of Appeals, Ninth Circuit. May 17, 1920.)

No. 3359.

1. New trial ⬅=9—Court properly limited new trial to issue of damages.

In an action to recover the value of ore extracted from plaintiff's extralateral vein, where the jury, upon evidence and instructions to which no exception was saved, found for the plaintiff but rendered a verdict uncertain as to the damages, it was proper for the trial court, in granting a new trial, to limit it to the issue of damages alone.

2. Mines and minerals ⬅=38(18)—Evidence held to sustain verdict finding vein was continuance of one apexing on claim.

Where plaintiff's vein dipped toward defendant's claim, but was interrupted by a fault, evidence that another vein segment extending un-

der defendant's claim was a part of the same vein *held* to sustain a verdict for plaintiff, notwithstanding defendant's testimony that it was part of a different vein, and that the other segments of the two veins had been lost because of the fault.

3. **New trial ⊕⊐124(1)—Petition must show diligence and new evidence that probably would produce different result.**

The petition for new trial on the ground of newly discovered evidence must show due diligence to procure the evidence before the former trial, and also that the evidence was such as would probably produce a different result on the new trial.

4. **New trial ⊕⊐108(2)—New evidence of experts held not to require new trial as to extralateral rights.**

Where the experts of plaintiff and defendant differed fundamentally as to the continuity of vein segments found only a few feet apart, new evidence by defendant's experts as to conditions 500 or 600 feet away would probably not be of sufficient weight with the jury to entitle defendant to a new trial.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Frank H. Rudkin, Judge.

Action by the Original Sixteen to One Mine against the Twenty-One Mining Company to recover damages for the wrongful taking of ore from the extralateral segment of a vein owned by plaintiff. Judgment for the plaintiff, and defendant brings error. Affirmed.

See, also, 260 Fed. 724, 171 C. C. A. 462, and 265 Fed. (C. C. A.) 547.

John B. Clayberg, Frank R. Wehe, and Bert Schlesinger, all of San Francisco, Cal., for plaintiff in error.

Wm. E. Colby, John S. Partridge, and Grant H. Smith, all of San Francisco, Cal., and Carroll Searls, of Nevada City, Cal., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This was an action at law by the plaintiff to recover damages for the wrongful taking of ore from the extralateral segment of a vein owned by the plaintiff. In the answer and cross-complaint of the defendant it sought to recover damages for a like taking of ore from the same vein. Upon the trial of the case, the jury rendered a verdict in favor of the plaintiff in the sum of $100,000, "less cost of extraction of the ore on account of unwillful trespass." Upon this verdict the court ordered a judgment in favor of the plaintiff for the sum of $100,000, "less cost of extraction of the ore on account of unwillful trespass."

Subsequently, upon a motion for a new trial, the court ordered that the verdict theretofore entered be permitted to stand, in so far as it found the issue in favor of the plaintiff, and a new trial was thereupon awarded, for the sole purpose of assessing the amount of the recovery. Upon a new trial upon that issue, with an amendment to the complaint alleging damages in the sum of $121,000, and "the parties having stipulated that the value of the ore taken out by defendant

---

⊕⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was $121,000, and the cost of mining and milling it was $61,000, "the jury, under instructions from the court, found in favor of the plaintiff for $60,000, and a judgment was entered accordingly. From this judgment the defendant brings this writ of error.

There were two main issues before the court at the first trial. The first was the question of title to the segment of vein embracing the ore body in controversy. The second was the question as to the amount of damages caused by the removal of this ore body. Upon the trial of these two issues before a jury, no exceptions were taken to the introduction of evidence by either party, and defendant took no exception to any of the instructions of the court to the jury. The jury returned a verdict in favor of the plaintiff on both issues. Upon the first issue it found the title to the ore body in favor of the plaintiff. Upon the second issue it also found in favor of the plaintiff upon the question of damages, but left the amount uncertain.

[1] The uncertainty arising out of that part of the verdict, which, after having found the damages against the defendant in the sum of $100,000, found further "less the cost of extraction of the ore on account of unwillfulness." It was contended by the plaintiff that there was sufficient data before the court in admitted facts to enable it to fix the amount of the damages. The court was of the opinion that under the authority of Hodges v. Easton, 106 U. S. 408, 1 Sup. Ct. 307, 27 L. Ed. 169, it could not—

"deduct from the amount of the verdict the cost of mining, transporting, and reducing the ore, albeit that such cost be shown by the admitted facts of the case."

The court thereupon ordered that the verdict should stand in so far as it found the issues in favor of the plaintiff, "and a new trial was ordered for the sole and only purpose of assessing the amount of the recovery." In making this order, the court said:

"This case, in my opinion, peculiarly calls for the exercise of the discretion of the court in awarding a new trial as to the single issue only. It was through mere inadvertence on the part of the jury that the case was not finally and forever disposed of at the last trial."

We are of the opinion that the court was correct in ordering a new trial and limiting such new trial to the one question of the amount of damages. The authority of the court to so limit a new trial is established by numerous authorities in both the federal and state courts: Calaf v. Fernandez, 239 Fed. 795, 798, 799, 152 C. C. A. 581; Farrar v. Wheeler, 145 Fed. 482, 488, 489, 75 C. C. A. 386; Duff v. Duff, 101 Cal. 1, 35 Pac. 437; Estate of Everts, 163 Cal. 449–452, 125 Pac. 1058; Robinson v. Muir, 151 Cal. 118–125, 90 Pac. 521; Lisbon v. Lyman, 49 N. H. 553; Simmons v. Fish, 210 Mass. 563, 97 N. E. 102, Ann. Cas. 1912D, 588; Marshal v. Dalton Paper Mills, 82 Vt. 489, 74 Atl. 108–113, 24 L. R. A. (N. S.) 128; Winn v. Columbian Ins. Co., 12 Pick. (Mass.) 279, 288; Patton v. City of Springfield, 99 Mass. 627, 634, 635; Perkins v. Brown, 132 Tenn. 294, 177 S. W. 1158–1160, L. R. A. 1915F, 723, Ann. Cas. 1917A, 124.

We have carefully considered the objections to the proceedings in the court below as presented upon this writ of error. They are fully stated by Judge Rudkin in his opinion filed December 18, 1918, on petition for a new trial. No useful purpose would be served in reviewing the numerous technical errors assigned for reversal. They do not affect the substantial rights of the parties. Section 269, Judicial Code, as amended by Act Feb. 26, 1919 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1246). Judge Rudkin's opinion in which we concur, is as follows:

[2] "A full statement of the facts in this case will be found in the opinion filed by the court disposing of a former petition for a new trial in this action, and awarding a final decree in favor of the plaintiff in a companion suit in equity involving the same issues; also, in the opinion filed later in the equity suit, denying a petition for a rehearing filed therein. In opinion first referred to, in awarding the final decree, I said: 'On the trial of the law action a vast amount of expert testimony was offered by the plaintiff tending to show the identity of the vein from the outcroppings or apex on the surface of the Sixteen to One claim down through the various workings, and perhaps an equal amount of testimony was offered by the defendant tending to show the contrary. The experts on each side consisted of geologists, mining engineers, and practical mining men. It is almost needless to say that the opinions of these experts were positive and unequivocal in favor of the party who called them, and little would be accomplished by adding one or more additional experts to the long list already in the record. It was conceded throughout the trial that there is a vein on the Sixteen to One claim; that this vein dips in an easterly direction at an angle of 45 or 50 degrees; that the vein terminates at a fault at about the 200-foot level, and that by dropping down a distance of 15 or 20 feet at the shaft, and a distance of 35 or 40 feet at the northerly boundary of the claim, another vein is picked up likewise terminating at a fault. The witnesses for the plaintiff testified that these two segments were one and the same vein, while the witnesses for the defendant testified to the contrary. Their theory is that, while there are two segments of veins there, the upper segment of the lower vein was thrown up several hundred feet above the present surface of the mountain and has eroded away, while the lower segment of the upper vein can probably be found several hundred feet lower down. The jury found it much easier to join the two existing segments together, thus making a single vein, than to speculate as to what has become of the two last segments, and with that conclusion I am in full accord.' "

"Again, in the latter opinion, in disposing of a petition for a rehearing, based on the ground of newly discovered evidence, I said: 'Little need be said on the petition for a rehearing. The affidavits filed in its support and in opposition are as conflicting as the testimony of the witnesses at the trial. Some of the witnesses, at least, on each side, find further confirmation of their preconceived views in the subsequent developments disclosed by the affidavits. No useful purpose will be subserved by a further reference to the conflict. The motion to vacate the decree and the petition for a rehearing are denied.' "

[3] "I still adhere to these views. In so far as the present petition is based on errors of law occurring at the first trial, I find no occasion to review the opinions heretofore expressed, if indeed I have jurisdiction to do so. That portion of the present petition based on newly discovered evidence requires but scant consideration. Before such a petition will be granted the court must be satisfied, first, that the evidence is newly discovered in fact and could not have been produced by the exercise of reasonable diligence at the former trial; and, second, that the newly discovered evidence will probably produce a different result upon a new trial. In my opinion, neither of these requirements have been satisfied by the showing made. The first trial did not take place until several months after the action was commenced; after the close of that trial, further testimony was taken in the equity suit and several months elapsed before its final submission; a motion for a new trial in the law action and a petition for a rehearing in the equity suit were next interposed; after

their denial several months elapsed before the second trial, and now at this late date the claim is made that new evidence of a controlling nature has been discovered since the last trial. Under such circumstances a petition of this kind should be viewed with at least some suspicion and examined with extreme caution.

[4] "But, conceding that due diligence has been shown, is there any reason to induce the court to believe that the new evidence would produce a different result at another trial before another jury? For, assuming that the witnesses for the plaintiff were mistaken as to the character of a vein or the throw of a fault in distant territory, what reason have we to assume that the jury would deem that fact controlling, when the same witnesses differed so widely as to the identity or continuity of two segments of a vein or veins found in the same claim only a few feet apart? Why should the opinion of experts based on conditions existing 500 or 600 feet away be deemed of so much importance, when the same experts differed equally as to segments or veins found only a few feet apart? The showing made in support of the petition demonstrates clearly that mining engineering is not one of the exact sciences, and the ease with which experts can change their views to meet the necessities or requirements of their employers, and but little else. For these reasons, in my opinion, the ends of justice would not be promoted by granting the petition in question, but quite to the contrary. Litigation must end at some point, and this protracted litigation must end here so far as the court is concerned.

"The petition is accordingly denied."

For the reasons stated in the foregoing opinion, the judgment of the court below is affirmed.

ROSS, Circuit Judge. I concur in the judgment, for the reason that while, technically, the original trial resulted in a mistrial, in that the verdict of the jury determined but one of the two issues submitted to it, the trial court, without objection from either party, approved the verdict as to which the finding was definite and certain, and subsequently submitted to another jury the issue theretofore left undetermined respecting the cost of the extraction of the ore in question in the case, the amount of which cost the respective parties expressly stipulated on the trial before the second jury.

I am therefore unable to see that the plaintiff in error was deprived of a jury trial upon either of the issues, or how it could have been injured by the irregular course pursued by the court below.