F. E. ATTEAUX & CO., Inc., v. PANCREON MFG. CORPORATION (two cases).

Circuit Court of Appeals, First Circuit. December 2, 1927.

Nos. 2120–2121.

1. Sales ⬤⟲273(5)—Sale of article for use in tanning process under trade-name did not imply warranty (Gen. L. Mass. c. 106, § 17 [4]).

Under G. L. Mass. c. 106, § 17 (4), sale of article for use in tanning process under its trade-name did not imply warranty for such use.

2. Sales ⬤⟲52(7)—Evidence in action for breach of contract held insufficient to support charge of seller's fraud in nature of deceit.

Evidence in action to recover for breach of contract to take delivery of merchandise to effect that purchaser tested articles and did not rely on seller's statements in the nature of others' opinions, held insufficient to support charge of fraud in nature of deceit.

3. Sales ⬤⟲384(1)—Seller held not entitled to full purchase price for breach of contract without passing of title or showing delivery, tender or notice of refusal to accept (G. L. Mass. c. 106, §§ 35, 52 [3]).

Where seller of merchandise under contract failed to make delivery to carrier for transportation sufficient to pass title in accordance with G. L. Mass. c. 106, § 35, and failed to make actual delivery, tender or notice under chapter 106, § 52 (3), damage is difference between fair market value and purchase price and damage for full purchase price cannot be sustained under section 52 (3) without title having passed or evidence of notice required of buyer's refusal to accept without which there is no right to recover full purchase price.

4. Costs ⬤⟲221—Neither party bringing error in cross-actions on single record are entitled to costs.

Where separate writs of error by both parties to cross-actions were considered on single record, neither party was entitled to costs.

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Suit by Pancreon Manufacturing Corporation against F. E. Atteaux & Co., Inc. wherein defendant filed a cross-suit. Judgment for plaintiff in the principal suit and for defendant in the cross-suit, and defendant and cross-plaintiff bring separate writs of error. Judgment vacated in principal suit and remanded for a new trial on question of damages only, and affirmed in cross-suit.

Francis M. Carroll, of Boston, Mass. (Sidney R. Wrightington, of Boston, Mass., on the brief), for plaintiff in error.

Lee M. Friedman, of Boston, Mass. (Paul D. Turner, Frank L. Kozol and Friedman,

Atherton, King & Turner, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. These cross-suits grow out of a controversy over a contract of sale of 2,000 barrels of pancreon to F. E. Atteaux & Co. In No. 2120, in which the Pancreon Company is the plaintiff, the declaration is in two counts: (1) For $3,964.80 for 150 barrels sold and delivered; (2) for breach of a contract to take delivery of 865 barrels, containing 165 pounds each, at 15 cents per pound.

In its answer and cross-suit the Atteaux Company pleaded misrepresentations and breach of express and implied warranty as to the efficiency of pancreon as a bate in the tanning of all kinds of skins.

The Atteaux Company is a manufacturer and importer of dyestuffs, chemicals, and tanning materials. Atteaux, its president and chief stockholder, had, at the time of the trial, been in the business for 48 years; he had agencies or branches in Boston, Gloversville, N. Y., Wilmington, Del., and Newark, N. J.

Pancreon is a chemical compound intended as a desirable substitute for noisome natural materials, formerly used to perform, in tanning, a process called bating, unnecessary here to describe in detail. Prior to 1922, another chemical compound for the same general purpose was on the market, called oropon. Early in 1922 the Pancreon Company brought its chemical bate, pancreon, to the attention of the Atteaux Company, and submitted a sample which Atteaux caused to be tested in his laboratory, and under date of March 14, 1922, wrote: "Will say that the 10 pounds of pancreon reached us safely, and we have made a laboratory test and believe the product to be satisfactory. If price is right, we can undoubtedly sell large quantities of the same. Kindly give us your lowest price, delivered in Boston in quantities."

Later in 1922, Atteaux bought 17 barrels of pancreon and put it "out among the trade to have them test it out." The result was good. On March 3, 1923, Atteaux made a contract for the purchase of 2,000 barrels of pancreon "at 15 cents a pound, cost and freight Gloversville, N. Y., Philadelphia, Pa., Newark, N. J., and Wilmington, Del."; shipments monthly as required, but entire amount to be taken within a year.

At the end of the year only 935 barrels had been delivered. The tanning business was much depressed. There was controversy as to whether the pancreon would bate all kinds of skins, or was efficient only for skins intended for gloves. The price of oropon was cut, and sharp competition resulted. But, after correspondence and negotiations, the parties, on February 18, 1924, made another or supplementary contract, which recited that, in consideration of the cancellation of the contract for 2,000 barrels, under which 1,065 barrels remained undelivered at the end of the contract period, the Atteaux Company agreed to accept delivery of 200 barrels per month in March, May, June, July, and August, and 65 barrels in September, 1924, f. o. b. Boston, Gloversville, or Philadelphia, the price being 15 cents per pound. Under this agreement 200 barrels were delivered in March, but only 50 paid for. Count 1 of the Pancreon Company's declaration is to recover the purchase price of 150 barrels. A little later the Atteaux Company refused to accept any of the remaining 865 barrels. The Pancreon Company's suit was brought on August 1, 1924, and the Atteaux Company's cross-suit on March 26, 1925.

After a trial of considerable length (the record is over 200 pages), involved mainly questions of fact, as to the representations made, oral and written, the Atteaux Company's reliance thereon, and the actual efficiency of pancreon in bating all kinds of skins, and not merely skins intended for gloves, the court ruled that in the Atteaux Company's cross-suit there was no evidence to support counts 2 and 3 (involving breach of implied warranty and fraudulent representations), and submitted both suits to the jury on all questions of fact concerning the express warranty.

On damages, the court instructed the jury that, if they found for the Pancreon Company, they should return a verdict for $3,964.60 under the first count, and under the second count for the amount of 865 barrels, of 165 pounds each, at 15 cents a pound.

The jury found for the Pancreon Company under both counts of its declaration, with interest from the date of the writ, returning a verdict of $27,394.17. On the Atteaux Company's cross-action the jury returned no verdict, because, as the foreman reported, "the jurors supposed the first action settled the second action." Thereupon the court ordered a verdict on count 1 of the cross-action (express warranty), and no exception was taken to this ruling.

This disposes of the cross-action, provided the court's ruling that there was no evidence for the jury under counts 2 and 3 was correct. They were correct.

[1] There was no implied warranty because

(besides other reasons) pancreon was sold under its trade-name, and the case in that aspect falls under G. L. c. 106, § 17 (4):

"In the case of a contract to sell or a sale of a specified article under its patent or other trade-name, there is no implied warranty as to its fitness for any particular purpose."

This disposes of count 2.

[2] The court was also right in ruling that there was no evidence to support count 3, in which the Atteaux Company alleged fraud in the nature of deceit. The case is in that regard too plain to call for any lengthy statement or analysis of the evidence. It is enough to note that the representations argued as fraudulent were made by the Pancreon Company's treasurer, who was known by Atteaux not to be a practical tanner, and whose opinions were clearly not accepted as of any weight. Moreover, in their very nature, the statements made by the treasurer were but trade talk, or a report of the favorable opinions of others, going through the treasurer as a mere conduit, and known by Atteaux to be a mere conduit. These statements were early accompanied by a sample of pancreon, at first taken and tested by Atteaux in his laboratory; later, substantial quantities of pancreon were tested by Atteaux's putting it out to his trade. We find no evidence that Atteaux ever relied either upon the treasurer's opinion or upon his statements of others' opinions as inducements either for the original contract of March 3, 1923, or of the contract now sued upon, of February 18, 1924—made more than two years after Atteaux began testing pancreon, and after he had sold approximately 1,000 barrels to his extensive line of customers, and had received their reports concerning its efficiency as a bate. The case lacks every necessary element of an action for deceit. See Vulcan Metals Co. v. Simmons-Mfg. Co. (C. C. A.) 248 F. 853, and cases cited.

On all questions involving liability, the rulings were sufficiently favorable to the Atteaux Company. It follows that the judgment, so far as grounded on count 1 for 150 barrels sold and delivered, must be affirmed.

But the trouble we meet arises from the court's ruling as to damages under the Pancreon Company's second count. The Atteaux Company asked a ruling that, if the Pancreon Company was entitled to recover under this count, the damage would be the difference between the fair market value and the purchase price. But the court ruled flatly that the measure of damage was the full purchase price of 865 barrels at 15 cents a pound. This ruling cannot be sustained.

[3] As an initial step, we note that it is inconsistent with the allegations of count 2 of the Pancreon Company's declaration. That count is for a breach of contract, through the Atteaux Company's alleged refusal to accept and pay for 865 barrels that the plaintiff "was ready, willing, and able" to deliver. There is no allegation of actual delivery, of tender, or of notice under G. L. c. 106, § 52 (3)—that the goods would thereafter be held by the Pancreon Company as bailee for the Atteaux Company. The difficulty is not merely one of pleading—a defect which could probably be remedied even now by amendment.

There is no evidence warranting a finding, much less a ruling of the court, that the title had passed. The contract required the seller to deliver the goods f. o. b. Boston, Gloversville, or Philadelphia. There was no delivery to the carrier for such transportation. G. L. c. 106, § 35. Cf. Birdsong v. Jordan, Inc. (C. C. A.) 297 F. 742, 744; Williston on Sales, §§ 280 and 280b; United States v. Andrews & Co., 207 U. S. 229, 240, 28 S. Ct. 100, 52 L. Ed. 185; John B. Frey Co., Inc., v. Silk, Incorporated, 245 Mass. 534, 539, 540, 140 N. E. 259.

Title had not passed.

Counsel also urge that, even if title had not passed, the ruling may be sustained under G. L. c. 106, § 52 (3), as follows:

"Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of paragraph (4) of the following section are not applicable, the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller shall treat the goods as the buyer's, and may maintain an action for the price."

Plainly, this is not so. It is true that there was some evidence that the goods could not be readily resold for a reasonable price. Atteaux gave testimony to the effect that he had inventoried his unsold pancreon at 6 cents a pound, or two-fifths of the contract price, 15 cents. Atteaux ordinarily sold it for 25 cents a pound, and sold 198 barrels between February, 1924, and February, 1925, at not less than this price. There was also evidence that the Atteaux Company was practically the Pancreon Company's only outlet in this vicinity. At most, however, it was a question for the jury as to whether the 865 barrels could have been sold at a reasonable price by the Pancreon Company. But there was no evidence whatever of the notice re-

quired of the refusal to accept. All that appears is that the Pancreon Company had on hand an unidentified stock of pancreon, from which it expected to fulfill its contract with the Atteaux Company, delivering from time to time to the requisite carrier, if and when the buyer complied with its repeated requests for shipping instructions. On these facts no title to specific goods had passed, and there was no right to recover the full purchase price under section 52 of the Uniform Sales Act (G. L. Mass. c. 106, § 52). The applicable rule of damages was the difference between the purchase price and the market value, with the necessary adjustment arising from the Pancreon Company's obligation to pay freight under the f. o. b. provision.

The general result is that, in No. 2121, the judgment for the defendant below must be affirmed; in No. 2120, the case is remanded to the court below for a new trial under count 2 of the plaintiff's declaration, on the issue of damages only. Great Western Coal Co. v. Chicago Great W. Ry. Co. (C. C. A.) 98 F. 274, 279; Farrar v. Wheeler (C. C. A.) 145 F. 487; Calaf v. Fernandez (C. C. A.) 239 F. 795, 798.

[4] As the cross-actions are here on a single record, neither party is entitled to costs.

These conclusions make it unnecessary to consider the Atteaux Company's petition filed in this court for leave to file a bill of review.

In No. 2120, the judgment of the District Court is vacated, the verdict is set aside, so far as it relates to the question of damages, and the case is remanded to that court for a new trial on the question of damages only. No costs to either party.

In No. 2121, the judgment of the District Court is affirmed, without costs to either party.